CHRISTENSON, Appellant,

v.

MOUNT CARMEL HEALTH, Appellee.

[Cite as *Christenson v. Mt. Carmel Health* (1996), 112 Ohio App.3d 161.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 95APE11–1474.

Decided June 28, 1996.

*Spater, Gittes, Schulte & Kolman* and *Frederick M. Gittes*, for appellant.

*Arter & Hadden, John P. Gartland* and *Donald A. Davies*, for appellee.

LAZARUS, Judge.

Plaintiff-appellant, Doranna Christenson, M.D., appeals from a judgment of the Franklin County Court of Common Pleas denying her request for injunctive and declaratory relief and dismissing her complaint.

This case concerns the denial of hospital staff privileges to a physician. For the reasons that follow, we hold that appellant was deprived of her right to a fair hearing when defendant-appellee, Mount Carmel Health (the "hospital"), departed from its own bylaws by failing to provide Dr. Christenson with information sufficient for her to respond to the allegations constituting the basis for the denial of hospital privileges.

Christenson brought suit under R.C. 3701.351 and the common law in the Franklin County Court of Common Pleas.[1] She sought an injunction requiring that she be granted privileges at Mt. Carmel East Hospital and that the hospital be required to correct its report regarding the reason for its denial of privileges to her submitted to the National Practitioners Data Bank coded under a provision entitled "incompetency/malpractice/negligence." The case was submitted on stipulated facts, exhibits, affidavits, and trial briefs. Following oral argument, the trial court denied appellant's request for injunctive relief and dismissed appellant's complaint. Appellant timely appealed the judgment of the trial court and raises the following three assignments of error:

"1. The trial court erred in concluding that the defendant-appellee Mount Carmel Health ('Hospital') was not arbitrary, capricious or unreasonable when it denied staff privileges to the plaintiff-appellant Dr. Doranna Christenson ('Dr. Christenson') in light of the fact that the Hospital relied solely for its decision on incorrect, unreliable, or unsubstantiated factual allegations, particularly where reliable and competent evidence exists in the record refuting these allegations.

---

1. R.C. 3701.351(D) creates a statutory cause of action by providing: "Any person may apply to the court of common pleas for temporary or permanent injunctions restraining a violation of division (A), (B), or (C) of this section. This action is an additional remedy not dependent on the adequacy of the remedy at law." Division A requires hospitals to set standards and procedures to be applied in considering and acting upon applications for professional privileges. Division B requires a hospital to follow its procedures.

"2. The trial court erred in concluding that the Hospital gave Dr. Christenson adequate procedural due process in light of the facts that the Hospital (a) failed to follow its own procedures and (b) failed to provide Dr. Christenson with information sufficient for her to respond to the basis for denial of hospital privileges.

"3. The trial court erred in failing to apply the hybrid standard of review for determining if the Hospital's decision was arbitrary, capricious or unreasonable."

Christenson received her medical degree in 1977 from the University of Alabama. She spent the first two years of her residency in obstetrics and gynecology ("OB/GYN") at the University of South Alabama in Mobile, Alabama, and the last two years of her residency in Albany, New York. She practiced in New York and Hawaii before entering a maternal/fetal medicine program at the Ohio State University. Christenson was board-certified in OB/GYN in 1984.

From 1985 to 1990, Christenson served as the principal investigator on a research grant funded by the National Institute of Health. The terms of the grant precluded Christenson from practicing medicine during that period. Christenson resumed practicing medicine when she went to work for Principal Health Care in January 1990. She worked with Principal Health Care until her contract expired in June 1992. While with Principal Health Care, Christenson became involved in a contract dispute over compensation. The dispute involved Dr. Dennis Cebul, who is on the board of directors of Principal Health Care and is also the chairman of the OB/GYN department at Riverside Methodist Hospital.

Christenson applied for provisional staff status with Mt. Carmel East Hospital in its OB/GYN department in October 1991. The bylaws of the Medical Staff of the Hospital and the Fair Hearing Plan set forth detailed procedures which an applicant and the hospital are to follow in the review of an application for privileges. The bylaws contain multiple levels of review and provide for appellate review of adverse determinations. Among other requirements, Section 6.2–2(d) of the bylaws required that Christenson submit:

"The names of at least three practitioners not currently or about to become partners with the applicant in professional practice or personally related to him who have personal knowledge of the applicant's current clinical ability, ethical character, health status, ability to work cooperatively with others, and other qualifications for appointment and who will provide specific written comments on these matters upon request from Hospital or Medical Staff authorities. The named individuals must have acquired the requisite knowledge through recent observation of the applicant's professional performance over a reasonable period of time, at least one, must have had organizational responsibility for supervision of his performance (e.g., Department Chairman, Service Chief, Training Program Director) * * *."

Christenson submitted recommendations from twelve physicians, none of whom were from her group and practice at the time, namely, Riverside Methodist Hospital and Principal Health Care. Although the Hospital later characterized these recommendations as "stale" and "weak," the first three hospital committees that reviewed those same submissions approved her application. The hospital's medical staff of the Department of Obstetrics and Gynecology, the Clinical Council for Provisional Staff Privileges, and then the Central Credentials Committee all recommended her for privileges.

Problems first appeared when Dr. Robert Hallet, chairman of the OB/GYN Department at the hospital, received and reviewed Christenson's application in the early part of 1992. Hallet telephoned Dr. Cebul, the chairman of the OB/GYN Department at Riverside Methodist Hospital. Hallet expressed by way of affidavit that he trusts and respects Cebul, having known him for over twenty years, since Cebul's years as a resident. Hallet's affidavit further stated:

"I contacted Dr. Cebul by telephone to obtain information regarding the clinical and surgical competency and performance of Dr. Christenson. I then relayed this information to the *Ad Hoc* Hearing Committee." Affidavit of Robert Hallet, M.D. at paragraph 6.

At the next level of review, the Medical Executive Committee ("MEC"), pursuant to a request from Hallett, voted to defer Christenson's application. At the time the MEC voted to defer, it had no information before it different from that before the first three committees except the unspecified information from Hallet.

The hospital notified Dr. Christenson by telephone and letter that action on her application was being deferred. Dr. Daniel Weltner, then president of the medical staff, explained that the MEC wanted clarification of Christenson's staff status at Riverside Methodist Hospital, wanted to know whether her relationship with Principal Health Care (a.k.a. Provider Physicians, Inc.) would be maintained, and wanted information more current than contained in her application materials. In a telephone conversation, Weltner told Christenson that she should obtain five references of individuals who were knowledgeable about her skill and competence as evidenced by her work within the preceding three years. Weltner sent Christenson a new application. Both the first application and the new application requested "medical references from five practitioners who can attest to your competence and character or have been responsible for professional observation of your work *within the past three years.*" (Emphasis *sic.*)

Christenson submitted the new application containing many of the same references and some additional references. On May 26, 1992, the MEC met again and voted to deny Christenson's application for privileges. The minutes of the MEC meeting do not reflect any discussion or concern regarding her

references, but, rather, Hallet reiterated that he had concerns regarding clinical performance:

"As of a conversation today, Doctor Robert Hallet, Chairman of the Department of OB/GYN at Mount Carmel East has reaffirmed his desire to deny Dr. Christenson's application based on *concerns regarding her clinical performance.* Other unanswered considerations which remain are Doctor Christenson's denial of privileges at Riverside which are currently being appealed, her lack of an office after July 1st, and lack of evidence of malpractice insurance after July 1st.

"A motion was made to deny the request of Doranna Christenson, M.D. for Provisional Staff Privileges based on Section 3.2–2(a) of the Medical Staff Bylaws, *Clinical Performance.* The motion was seconded and passed." (Emphasis added.)

Christenson received notice of the MEC's decision by letter dated June 1, 1992. The letter notified her of her right to appeal to the Ad Hoc Hearing Committee of the Medical Staff and stated that she would be notified of the grounds for the decision. By letter dated June 25, 1992, the hospital informed Christenson of her hearing date and that her staff appointment had been denied "based on section 3.2–2 and 3.2–3(a) of the Medical Staff Bylaws, specifically section 3.2–2(a), which includes insufficient references, questions regarding your clinical ability and present professional status." [2]

At no time prior to the hearing before the Ad Hoc Committee was Christenson informed of what questions or concerns the hospital had regarding her clinical ability. The parties stipulated that, from the time the MEC voted to recommend denial of Christenson's application, she was never informed of any specific act, omission, case, or record which demonstrated in any way any lack of clinical or surgical competency on her part.

At the hearing, without revealing or discussing any specifics of Christenson's performance, Hallett related that he had spoken to "some of the resident staff at Riverside Hospital." He continued:

"[T]hey more or less confirmed the fact that she had some difficulties in her performance of her job notwithstanding her background from medical and clinical activities as far as her working at—as an assistant in university hospitals and elsewhere."

---

**2.** Section 3.2–2(a), entitled "CLINICAL PERFORMANCE," is contained in a portion of the bylaws setting forth basic qualifications for membership. It states: "Professional education, training, experience and clinical results, documenting a continuing ability to provide patient care services at an acceptable level of quality and efficiency given the current state of healing in that field and consistent with available resources."

At the hearing, Hallet relayed additional information concerning Christenson's work at Riverside Methodist Hospital that was later proven to be false. For example, Hallet stated that he made a call (presumably to Cebul) and "was told that because of her alleged inadequacies and her conduct of her work, that she had been limited to office activity only and that she no longer was granted the privilege of operating on any patients of Health One or delivering patients that had been insured by Health One, and that she had been confined to seeing patients only at one of the Health Ones, which became Principal Health Care, and that location was on Hamilton Road."

In response to these new charges, Christenson submitted a Riverside Hospital log listing the numerous surgeries she performed at Riverside during the period when she was allegedly restricted to office activity. Other alleged deficiencies raised by Hallet (the fact that Christenson attended two residency programs, her period of no clinical work while she was doing research, and a question about the status of her malpractice insurance) were addressed at the hearing. Christenson also provided the Ad Hoc Committee with letters from Riverside Methodist Hospital and the Ohio State University Hospital granting her staff privileges. Christenson informed the Ad Hoc Committee that Cebul, the source for Hallet's concerns regarding her clinical competence, had recused himself from the process of determining her staff privileges at Riverside because of the conflict of interest created by their contract dispute.

On November 9, 1992, the hospital notified Christenson that the Ad Hoc Committee had recommended that her application be denied and that their recommendation had been upheld by the MEC.[3] Christenson exercised her right to appeal this decision, and through counsel she requested a hearing before the Appellate Review Committee of the Board of Trustees, a copy of the Ad Hoc Committee's report, and a transcript of the Ad Hoc Committee hearing. Although she had access to the transcript of the Ad Hoc Committee hearing, Christenson was still not provided with an explanation of what the concerns regarding her clinical performance were.

The parties dispute, and the trial court did not make a specific finding, whether Christenson received a copy of the Ad Hoc Committee report prior to the Appellate Review Committee hearing. The trial court did find, however, that the MEC and the Ad Hoc Committee did a "poor job of conveying their specific concerns" to Christenson. Even if Christenson had received the Ad Hoc Committee report, it does not include the substance or specifics of the alleged

---

**3.** Under Sections 4.1 and 4.2, Art. III, of the Fair Hearing Plan, the Ad Hoc Committee was required to conduct a hearing and make findings and a recommendation to the MEC, which could affirm, modify or reverse the recommendation.

concerns regarding her clinical and surgical competency, information critical to her presentation before the Appellate Review Committee.

Before the Appellate Review Committee, Christenson presented additional documentary evidence, including current letters of recommendation, documentation of surgical procedures at Riverside Methodist Hospital, and proof of malpractice insurance. The Appellate Review Committee referred the matter back to the Ad Hoc Committee, which met and again recommended that Christenson's application be denied. Christenson was not notified of the second Ad Hoc Committee meeting or permitted to submit additional evidence to the committee. Nor did she receive a copy of the second Ad Hoc Committee report until the filing of the lawsuit. After receiving the Ad Hoc Committee's minutes, the Appellate Review Committee voted to deny Christenson's application for staff privileges.

At the time of the final decision regarding Christenson's application, twenty physicians had recommended her for privileges, she had never had a malpractice judgment against her (and only one claim, which had been dismissed for lack of merit), and she was teaching surgery and clinical practice to residents as a faculty member at the Ohio State University College of Medicine. She had been granted privileges at Riverside Methodist Hospital, Grant Hospital, and the Ohio State University Hospital. The chairperson of Riverside Hospital's OB/GYN Quality Care Committee had reported that her cases met all relevant standards, and Dr. Russ, the program director of the OB/GYN Medical Education Department at Grant Hospital, reported that there had been no quality care issues identified at Grant Hospital related to her clinical work. Mount Carmel Hospital had received no written communication from any person, hospital, or medical provider which evidenced any complaints of any kind from any patients, co-workers, residents, physicians, or staff affiliated with Riverside Methodist Hospital or Principal Health Care regarding Christenson's clinical or surgical practice with them.

The hospital has stipulated that, at the time of the final decision regarding Christenson's application, the hospital was unaware of any specific obstetrical or surgical procedure performed by Christenson at any institution with which she had ever been affiliated which fell below accepted standards of care.

Nevertheless, the hospital reported to the National Practitioners Data Bank that Christenson "did not sufficiently demonstrate current clinical and surgical competency." The report regarding the reason for its denial of privileges was coded under Data Bank Provision 650.02, which is entitled "incompetency/malpractice/negligence." The National Practitioners Data Bank will provide this information to all hospitals or other entities to which Christenson applies.

Christenson's third assignment of error addresses the threshold issue of the court's standard of review of hospitals' denial of privileges. The Ohio Supreme

Court has cautioned that a reviewing court should not "stray[ ] into a morass of error" by substituting its judgment for that of the hospital's trustees. *Khan v. Suburban Community Hosp.* (1976), 45 Ohio St.2d 39, 43, 74 O.O.2d 56, 58, 340 N.E.2d 398, 401–402. In *Khan,* the Supreme Court held:

"Where the board of trustees of a private, nonprofit hospital adopts reasonable, nondiscriminatory criteria for the privilege of practicing major general surgery in the hospital, and procedural due process is followed in adopting and applying such criteria, * * * a court should not substitute its evaluation and judgment of such matters for those of the board of trustees * * *." *Id.* at syllabus.

■ The general rule that a hospital's exercise of discretion in excluding members of the profession is ordinarily not subject to judicial review does not apply " 'where there is a contention that the hospital failed to conform to procedural requirements set forth in a hospital's constitution, bylaws, or rules and regulations.' " *Bock v. John C. Lincoln Hosp.* (App.1985), 145 Ariz. 432, 433, 702 P.2d 253, 254, quoting *Peterson v. Tucson Gen. Hosp., Inc.* (App.1976), 114 Ariz. 66, 69, 559 P.2d 186, 189. " 'The court is charged with the narrow responsibility of assuring that the qualifications imposed by the board are * * * fairly administered.' " *Khan, supra,* 45 Ohio St.2d at 44, 74 O.O.2d at 58, 340 N.E.2d at 402, quoting *Sosa v. Bd. of Managers of Val Verde Mem. Hosp.* (C.A.5, 1971), 437 F.2d 173, 177.

In *Bouquett v. St. Elizabeth Corp.* (1989), 43 Ohio St.3d 50, 538 N.E.2d 113, the Supreme Court of Ohio clarified the standard of review, holding:

"The board of trustees of a private hospital has broad discretion in determining who shall be permitted to have staff privileges. Courts should not interfere with the exercise of this discretion unless the hospital has acted in an arbitrary, capricious or unreasonable manner or, in other words, has abused its discretion." *Id.* at paragraph one of syllabus.

In *Ucker v. Mt. Carmel Health* (Mar. 9, 1993), Franklin App. No. 92AP–1509, unreported, 1993 WL 63915 this court reviewed the record and found evidence, albeit minimal evidence, to support a denial of privileges. This court concluded that there was reliable, probative, and substantial evidence supporting the rejection of Dr. Ucker's application. One can infer from this decision that a complete lack of evidence supporting the hospital's stated reason for the denial of privileges would have led to the conclusion that the hospital's decision was unreasonable and, therefore, an abuse of discretion. The principle that emerges from these cases is that a reviewing court is required to review the evidence to see if the determination of the hospital is supported by any evidence.

Whether there is any evidence to support a decision is a question of law. *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 111, 17 O.O.3d 65, 67, 407 N.E.2d 1265, 1267–1268; *Kaufman v. Broughton* (1877), 31 Ohio St. 424, 430; *W.*

*Ohio Ry. Co. v. Fairburn* (1918), 99 Ohio St. 141, 142, 124 N.E. 131, 131; *Woolley v. Staley* (1883), 39 Ohio St. 354, 361. When a decision is challenged as being unsupported by any evidence, the court will carefully consider the entire record to decide whether there is any evidence to support a decision. *Stoltz v. Carroll* (1919), 99 Ohio St. 289, 302, 124 N.E. 226, 229. A determination that there is a complete lack of evidence to support a finding does not involve a weighing of the evidence. *Katz v. Am. Fin. Co.* (1925), 112 Ohio St. 24, 28–29, 146 N.E. 811, 812.

■ Therefore, in determining whether a hospital abused its discretion, the reviewing court must consider the evidence to see if there is any factual support for the hospital's decision. *Ucker, supra.* A decision without any foundation in fact is unreasonable.

Christenson argues that a reviewing court must conduct a limited review of the evidence to determine if the hospital's decision is supported by any reliable, probative, and substantial evidence. This standard, she argues, requires a limited weighing of the evidence to determine if it is reliable, probative, or substantial, or whether it is utterly lacking in credibility. A decision based only on unreliable and untruthful evidence, Christenson asserts, is arbitrary, capricious or unreasonable, or, in other words, an abuse of discretion. Christenson urges us to apply the hybrid factual/legal standard of review used in appeals from administrative agencies in determining whether the hospital's decision was arbitrary or unreasonable.

The hospital argues that the standard of review applied to administrative appeals does not apply to an appeal of a hospital's denial of privileges. The hospital asserts that the trial court must merely determine whether the hospital based its decision on some reasonable basis so as not to constitute an abuse of discretion. The hospital's assertion sidesteps the issue of how the reviewing court is to go about determining whether a decision is unreasonable, arbitrary, or capricious.

The trial court held that its only function was to conduct a review to determine whether or not Christenson was afforded procedural due process and whether the hospital acted in a reasonable, nonarbitrary, and noncapricious manner with respect to the standard imposed and its application to her. This is a correct statement of the law as set forth in *Khan* and *Bouquett, supra.* The trial court then stated that it would not apply the hybrid standard of review used in administrative appeals, believing that Christenson was asking the court to impermissibly weigh the evidence and to substitute its judgment for that of the hospital. We agree with the trial court that we may not substitute our judgment for that of the hospital. Therefore, we decline to apply the standard of review used in administrative appeals. However, under our reading of *Khan, Bouquett,* and *Ucker, supra,* a reviewing court still must consider the evidence to see if there is any factual support for the hospital's decision.

The general rule in an administrative appeal is that the court should not substitute its judgment for that of the agency, giving due deference to the administrative resolution of evidentiary conflicts. *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 111, 17 O.O.3d 65, 67, 407 N.E.2d 1265, 1267. However,

"[D]etermining whether an agency order is supported by reliable, probative and substantial evidence essentially is a question of the absence or presence of the requisite quantum of evidence. Although this in essence is a legal question, inevitably it involves a consideration of the evidence, and to a limited extent would permit a substitution of judgment by the reviewing * * * court." *Id.*

The Supreme Court of Ohio has interpreted *Conrad* to mean that:

"[A]n agency's findings of fact are presumed to be correct and must be deferred to by a reviewing court unless that court determines that the agency's findings are internally inconsistent, impeached by evidence of a prior inconsistent statement, rest upon improper inferences, or are otherwise unsupportable." *Ohio Historical Soc. v. State Emp. Relations Bd.* (1993), 66 Ohio St.3d 466, 471, 613 N.E.2d 591, 595.

To the extent Christenson is asking the court to weigh the evidence, substitute its judgment for that of the hospital, and thereby stray into a morass of error, the assignment of error is not well taken. While we will not guess as to what weight, if any, the hospital afforded the evidence, a complete lack of evidence as to the stated basis for its decision would support a finding that the hospital abused its discretion. The third assignment of error is not well taken.

Appellant's second assignment of error presents the question of whether the hospital's review of Christenson's qualifications complied with fundamental principles of fair procedure.

Mt. Carmel's bylaws are not facially unreasonable, arbitrary, or capricious. *Ucker, supra.* The bylaws require that the notice of hearing "contain a concise statement of the practitioner's alleged acts or omissions, a list by number of the specific or representative patient records in question and/or the other reasons or subject matter forming the basis for the adverse recommendation or action which is the subject of the hearing." Section 2.2, Article II, Fair Hearing Plan.

■ The trial court found that, although the MEC and the Ad Hoc Committee did not follow procedures prescribed in the bylaws, by the time the Ad Hoc Committee made its final recommendation, it had before it the "entire picture," thus affording Christenson due process in accordance with the *Khan* standard of fair procedure. We disagree.

The notice Christenson actually received informed her that her staff appointment had been denied "based on section 3.2–2 and 3.2–3(a) of the Medical Staff

Bylaws, specifically section 3.2–2(a), which includes insufficient references, questions regarding your clinical ability and present professional status." (Letter of June 25, 1992.) The Ad Hoc Committee transcript refers to "difficulties in her performance of her job" and "alleged inadequacies and her conduct of her work."

Although Christenson was given several opportunities to submit additional information and references, she was never given adequate notice of the substance of the alleged concerns regarding her clinical and surgical competency, information critical to an informed response. This lack of adequate notice placed Christenson in the position of having to guess as to Hallet's vague allegations of "concerns regarding her clinical performance" in preparing her defense.

The hospital submits that Christenson knew of the concerns and issues raised by Hallet, in particular, the negative report from Cebul. The fact that Cebul was the source for Hallet's "concerns regarding her clinical performance" simply highlights the inadequacy of what was provided, given Cebul's admitted conflict of interest. Hallet never provided any explanation of the acts or omissions forming the basis for his concern. We are left with Hallet and the committee's conclusion that Christenson lacked clinical competence, but the factual predicate for those concerns or questions regarding her clinical skills or performance remains undisclosed.

This failure to inform Christenson constitutes a violation of the hospital's bylaws, which require that the physician be informed of the nature of the "alleged acts or omissions, a list by number of the specific or representative patient records in question and/or the other reasons or subject matter forming the basis for the adverse recommendation or action." Section 2.2, Article II, Fair Hearing Plan. By stipulating that Christenson was not informed of any specific act, omission, case, or record which demonstrated in any way any lack of clinical or surgical competency, the hospital has admitted that it failed to comply with its own bylaws. In accordance with its bylaws, a physician who is being denied staff privileges should be provided with a written statement specifying the reasons the application is being denied. Based on the record before us we, like Christenson, are left to speculate as to the nature and details of those ostensible concerns.

Other courts that have addressed the adequacy of notice are in accord. In *Rosenblit v. Superior Court* (1991), 231 Cal.App.3d 1434, 282 Cal.Rptr. 819, the hospital provided the physician with a list of thirty patient charts which were found to have problems in diabetic management and clinical judgment. Four charts were identified as representative of problems in fluid management. This notice was judged inadequate by the reviewing court. The court found that because the list lacked any indication as to what supposed deficiency applied to each chart, it did not provide adequate notice of the charges against the physician.

"[Because the hospital] refused to disclose the specific acts or omissions which allegedly harmed his patients, he was forced to prepare a wholesale defense to all possible charges. [The hospital's] duty to provide adequate notice is not excused because [the physician] managed to present a defense to the charges. It is impossible to speculate how he might have defended had he been informed of the specific problems with each patient." *Id.* at 1446, 282 Cal.Rptr. at 825–826.

Without adequate notice of the charges against him, the court found that the physician was denied a fair hearing. *Id.* at 1448–1449, 282 Cal.Rptr. at 827.

Similarly, in *Kiester v. Humana Hosp. Alaska, Inc.* (Alaska 1992), 843 P.2d 1219, a physician who applied for privileges was interviewed and asked a series of questions designed to test his medical knowledge and competence. His application was denied when he received negative evaluations by the physicians who had interviewed him. The evaluations concluded in general terms that the physician lacked sufficient medical knowledge to be granted surgical privileges. The hospital sent a notice to the physician that his application had been rejected, not on the basis of charges of misconduct or malpractice, but on the basis that he had not satisfactorily demonstrated that he was qualified by virtue of his background, experience, training, and demonstrated competence. The Supreme Court of Alaska held that, in a fundamental sense, the notice was inadequate because it did not give the physician notice of the reason his application was denied. The court stated:

"[B]asic principles of due process of law require that when a hospital denies an application for privileges, it notifies the applicant of the specific criteria which were determinative in the denial and how the applicant failed to meet the hospital's expectations with regard to the criteria." *Id.* at 1225.

Fair procedure requires meaningful notice of adverse actions and the grounds or reasons for such actions, with an opportunity to address or challenge those grounds during the review process. We hold that the hospital abused its discretion by denying Christenson staff privileges and submitting a negative report to the National Practitioners Data Bank based upon concerns about her clinical competence without ever notifying her as to what those concerns were and providing her a meaningful opportunity to address those concerns as required by its own bylaws. The second assignment of error is well taken.

By her first assignment of error, Christenson challenges the trial court's failure to analyze the evidence before it to see if the hospital's decision was arbitrary, capricious or unreasonable. Christenson claims that the evidence on which the hospital relied in denying privileges to her was all but nonexistent. As discussed previously, when a court reviews the record to decide whether there is any evidence to support a decision, it is not weighing the evidence or passing upon its credibility. *Woolley, supra,* 39 Ohio St. 354.

The hospital asserts that Christenson's "less than stellar" references support the conclusion that she lacked clinical competence. The Ad Hoc Committee reports expressed concern that Christenson's letters of recommendation were not strong enough or current enough and did not include recommendations from her practice group at Riverside Methodist Hospital.

The hospital's bylaws require recommendations from three practitioners who have personal knowledge of the applicant's current clinical ability, ethical character, health status, ability to work cooperatively with others, and other qualifications for appointment. The application form requested five references from within the past three years. At the time the final decision was made to deny Christenson's application, the hospital had before it twenty physician references, including one from Dr. John Vickers, who had worked with Christenson at Principal Health Care, all recommending the granting of privileges.

We are hard pressed to see how twenty letters recommending Christenson for staff privileges can form the basis for denial of privileges or a report to a national data bank coded "incompetency/malpractice/negligence." To look behind the hospital's alleged concerns about the sufficiency, currency, or strength of these recommendations is, however, the kind of weighing of the evidence that *Khan* prohibits. It is not within the expertise of courts to evaluate the strength of Christenson's letters of reference, and nothing in our decision is an expression of opinion as to the substantive merits of whether or not she should have staff privileges. See *Bock, supra*, 145 Ariz. at 438, 702 P.2d at 259. It is, however, within the purview of the courts to determine whether a hospital has followed its bylaws and whether its decision regarding an application for privileges was made in accordance with basic principles of fairness. *Kiester, supra*, 843 P.2d at 1223. Upon remand, Christenson must be apprised of the specific acts or omissions which led to the determination that she lacked clinical and surgical competency and be given a fair opportunity to refute the allegations. Accordingly, the first assignment of error is not well taken.

Based on the foregoing, the first and third assignments of error are overruled, the second assignment of error is sustained, and the judgment of the Franklin County Court of Common Pleas is reversed. This cause is remanded to the Franklin County Court of Common Pleas court with instructions to grant the injunctive relief requested, unless the hospital, within a reasonable time, grants Christenson the benefit of a hearing process that is fundamentally fair and in compliance with its own bylaws.

*Judgment reversed and cause*
*remanded with instructions.*

TYACK and CLOSE, JJ., concur.