**David M. SOKOL, M.D.,**
**Plaintiff–Appellee,**

v.

**AKRON GENERAL MEDICAL CENTER, Defendant–Appellant,**

Daniel P. Guyton, M.D.; Michael A. Oddi, M.D.; Cardio–Thoracic and Vascular Surgeons, Inc., Defendants.

No. 97–4323.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 15, 1998.

Decided April 22, 1999.

Rehearing and Suggestion for Rehearing En Banc Denied June 7, 1999.*

* Judge Merritt would grant rehearing for the reasons stated in his dissent.

Scott E. Salsbury (argued and briefed), Roetzel & Andress, Akron, Ohio, Breaden M. Douthett (briefed), Roetzel & Andress, Cleveland, Ohio, for Defendant–Appellant.

Michael J. Jordan (briefed), Barbara R. Marburger (argued), Walter & Haverfield, Cleveland, Ohio, George W. Schmedlen (briefed), Waldheger, Coyne & Associates, Westlake, Ohio, for Plaintiff–Appellee.

Before: MERRITT, NORRIS, and GILMAN, Circuit Judges.

ALAN E. NORRIS, J., delivered the opinion of the court, in which GILMAN, J., joined. MERRITT, J. (pp. 1032–33), delivered a separate dissenting opinion.

ALAN E. NORRIS, Circuit Judge.

Plaintiff David M. Sokol, M.D., brought federal antitrust and state law claims against defendants Akron General Medical Center ("Akron General"), Daniel P. Guyton, M.D., Michael A. Oddi, M.D., and Cardio–Thoracic and Vascular Surgeons, Inc. Based upon one of his state law claims, plaintiff also sought an injunction to prevent Akron General from instituting limitations on his medical staff privileges and from reporting its decision to limit his privileges to any state or federal reporting agency, public or private entity, or third-party payor. After the parties consented to her jurisdiction over the motion for injunctive relief, the magistrate judge issued a permanent injunction, and Akron General filed an interlocutory notice of appeal.[1]

## I.

Plaintiff is a cardiac surgeon on staff at Akron General. The Medical Council at Akron General received information in the mid–1990's indicating that plaintiff's pa-tients had an excessively high mortality rate. Concerned about plaintiff's performance of coronary artery bypass surgery ("CABG"), the Medical Council created the CABG Surgery Quality Task Force in 1994 to conduct a review of the entire cardiac surgery program at Akron General. The Task Force hired Michael Pine, M.D., a former practicing cardiologist who performs statistical risk assessments for evaluating the performance of hospitals. At a presentation in 1994 attended by plaintiff, Dr. Pine identified plaintiff as having a mortality rate of 12.09%, a "high risk-adjusted rate." Risk adjustment analyzes the likelihood that a particular patient or group of patients will die, as compared to another patient or group of patients. Dr. Pine stated in a summary of his findings that the predicted mortality rate for plaintiff's CABG patients was 3.65%, and plaintiff's "high mortality rate was of great concern and warrants immediate action."

James Hodsden, M.D., Chief of Staff at Akron General, requested that the Medical Council consider plaintiff for possible corrective action. Pursuant to the Medical Staff Bylaws, the Medical Council forwarded the complaint to the chairman of plaintiff's department, who appointed an Ad Hoc Investigatory Committee to review plaintiff's CABG surgery performance. The Medical Staff Bylaws require the Investigatory Committee to interview the staff member being reviewed and provide the Medical Council with a record of the interview and a report. The Investigatory Committee met with plaintiff three times. At the first meeting, the Investigatory Committee identified the issues before it to include addressing questions raised by plaintiff about the Pine study and determining the cause of plaintiff's excessive mortality rate. At the second meeting, the Investigatory Committee examined the mortality rate of plaintiff's patients using the Society of Thoracic Surgeons ("STS")

1. Subsequent to the issuance of the injunction, the district court granted a motion for summary judgment on the federal claims in favor of Akron General and dismissed the remaining state claims for lack of jurisdiction.

methodology. Under STS methodology, the Investigatory Committee, like Dr. Pine, determined that plaintiff's CABG risk-adjusted mortality rate was roughly three times higher than the predicted mortality rate. The Investigatory Committee discussed the results of this analysis with plaintiff at the meeting.

At the third meeting, the Investigatory Committee reviewed with plaintiff various records of his twenty-six CABG patients who died either during or around the time of surgery. The Investigatory Committee determined that one factor leading to the deaths of these patients was poor case selection, meaning plaintiff did not adequately screen out those patients for whom CABG surgery was too risky. The Investigatory Committee also found that the excessive number of deaths may have been due to insufficient myocardial protection, which led to heart attacks.

The Investigatory Committee ultimately reported to the Medical Council that plaintiff's mortality rate was excessively high and that the two principal causes for this high mortality rate were poor case selection and "improper myocardial protection." The Investigatory Committee recommended that all cases referred to plaintiff for CABG surgery undergo a separate evaluation by another cardiologist who could cancel surgery felt to be too risky. It also recommended that plaintiff not be permitted to do emergency surgery or serve on "cathlab standby" and that there be an ongoing review of his CABG patients by a committee reporting to the Medical Council. Finally, it recommended that a standardized myocardial protection protocol be developed, and that all cardiac surgeons should be required to comply with the protocol.

Plaintiff appeared before the Medical Council on November 21, 1996, and the Medical Council voted to implement the recommendations. Under the Akron General Medical Staff Bylaws, when the Medical Council makes a decision adverse to the clinical privileges of a staff member,

the staff member must be given notice of the decision of the Medical Council, and the notice shall specify "what action was taken or proposed to be taken and the reasons for it." This notice allows the staff member to prepare for a hearing to review the Medical Council's decision. The content of the letter sent plaintiff is set out more fully in section II.A. of this opinion.

Plaintiff and representatives from the Medical Council appeared before an Ad Hoc Hearing Committee on March 27, 1997. Plaintiff was represented by legal counsel, submitted exhibits, and testified on his own behalf. Dr. Gardner, a member of the Investigatory Committee, testified that although the Pine study and the STS methodology tended to underestimate the actual risk in some of plaintiff's cases, the Investigatory Committee concluded that the STS risk stratification tended to corroborate the Pine analysis. When asked about the Medical Council's determination that plaintiff engaged in poor case selection, Dr. Gardner had difficulty identifying specific cases that should not have had CABG surgery, yet he stated that "in the aggregate" there was poor case selection.

The Hearing Committee recommended that the Medical Council restore all plaintiff's CABG privileges. The Medical Council rejected the recommendation of the Hearing Committee and reaffirmed its original decision. In accordance with the Bylaws, plaintiff appealed the Medical Council's determination to the Executive Committee of the Board of Trustees of Akron General. This Committee affirmed the Medical Council's decision. Plaintiff then asked the district court for injunctive relief against Akron General.

## II.

■ We review a grant of a permanent injunction for an abuse of discretion. *See In re Dublin Securities, Inc.*, 133 F.3d 377, 380 (6th Cir.1997), *cert. denied, Terlecky v.*

*Hurd,* —— U.S. ——, 119 S.Ct. 45, 142 L.Ed.2d 35 (1998). "A district court by definition abuses its discretion when it makes an error of law." *Koon v. United States,* 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996).

The magistrate judge cited two bases for imposing a permanent injunction. First, she concluded that plaintiff received insufficient notice of the grounds for the Medical Council's decision before the Hearing Committee meeting, and second, she found that the Medical Council's determination was arbitrary. The circumstances of this case warrant neither conclusion.

 Under Ohio law, private hospitals are accorded broad discretion in determining who will enjoy medical staff privileges at their facilities, and courts should not interfere with this discretion "unless the hospital has acted in an arbitrary, capricious or unreasonable manner or, in other words, has abused its discretion." *Bouquett v. St. Elizabeth Corp.,* 43 Ohio St.3d 50, 51, 538 N.E.2d 113, 114 (1989). However, hospitals must provide "procedural due process . . . in adopting and applying" "reasonable, nondiscriminatory criteria for the privilege of practicing" surgery in the hospital. *Khan v. Suburban Community Hospital,* 45 Ohio St.2d 39, 39, 340 N.E.2d 398, 399 (1976) (syllabus by court) (cited by *Bouquett,* 43 Ohio St.3d at 53, 538 N.E.2d at 116).

### A. *Insufficient notice*

 This appeal requires us to examine the extent of the procedural protections afforded plaintiff under Ohio law. In addition to an appeals process, "[f]air procedure requires meaningful notice of adverse actions and the grounds or reasons for such actions" when a hospital makes an adverse decision regarding medical staff privileges. *Christenson v. Mount Carmel Health,* 112 Ohio App.3d 161, 172, 678 N.E.2d 255, 263 (1996); *see also Gureasko v. Bethesda Hosp.,* 116 Ohio App.3d 724, 729, 689 N.E.2d 76, 79 (1996) (characteriz-

ing the process owed a physician by a hospital as "minimal"). Akron General's Medical Staff Bylaws require that notice of an adverse decision by the Medical Council state "what action was taken or proposed to be taken and the reasons for it" and thus do not contractually provide for a quality of notice exceeding that required by Ohio law.

 The President of Akron General sent plaintiff a letter notifying him of the Medical Council's initial decision. The letter refers plaintiff to the minutes of the Medical Council's meeting which set out the reasons for the Council's decision. These minutes, provided to plaintiff, indicate that the findings and recommendations of the Investigatory Committee were presented. The Investigatory Committee found that "[t]he number and percentage of deaths in Dr. Sokol's population was excessively high compared to the published national statistics and other local surgeons." Two reasons for this high percentage were offered—poor case selection and problems with protecting against myocardial infractions. These observations served as the basis for the Investigatory Committee's recommendation that plaintiff's privileges be limited. The minutes reflect that the Medical Council implemented the Investigatory Committee's recommendations.

According to the magistrate judge, the notice provided plaintiff was insufficient because

> [t]he concept of "notice," if it means anything at all in the context of a privileges action, must include disclosure of the data upon which Akron General relied, and therefore the data upon which Pine relied. More important, it must include identification of the patient charts which support the decision of the hospital. That means that Dr. Sokol should have been informed of the specific cases where he engaged in poor case selection and whether he failed to provide appropriate myocardial protection.

The sort of notice demanded by the magistrate judge was not required by the circumstances of this case. Had Akron General restricted plaintiff's rights because the Medical Council determined that he had poor case selection or provided insufficient protections against myocardial infractions, then perhaps specific patient charts should have been indicated, along with specific problems with each of those charts. However, Akron General had a more fundamental concern with plaintiff's performance: too many of his patients, in the aggregate, were dying, even after accounting for risk adjustment. Poor case selection and problems in preventing myocardial infraction were just two reasons suggested by the Investigatory Committee for the high mortality rate.

Plaintiff takes issue with the Pine study and the STS algorithm, claiming that they do not present an accurate picture of his performance as a surgeon because he is the "surgeon of last resort." In other words, so many of his patients die because so many of his patients are already at death's door. Perhaps plaintiff is correct about that. However, it is not for us to decide whether he has been inaccurately judged by the Investigatory Committee and the Medical Council. Instead, we are to determine whether plaintiff had sufficient notice of the charges against him to adequately present a defense before the Hearing Committee. He knew that the Medical Council's decision was based upon the results of the Pine study and the STS analysis, knew the identity of his patients and which ones had died, and had access to the autopsy reports and medical records of these patients. In addition to the letter sent him by the President of Akron General notifying him of the grounds for the Medical Council's decision, he was present at Dr. Pine's initial presentation and he met with the Investigatory Committee concerning the Pine study and the STS assessment. Manifestly, he had notice and materials sufficient to demonstrate to the Hearing Committee's satisfaction that limiting his privileges was inappropriate.

Our conclusion that the notice provided plaintiff was sufficient is in keeping with the holding in *Christenson v. Mount Carmel Health, supra.* There the hospital denied the plaintiff's application for staff appointment. Before her hearing, she was notified that her staff appointment had been denied because of " 'insufficient references, questions regarding [her] clinical ability and present professional status' ... 'difficulties in her performance of her job' and 'alleged inadequacies and her conduct of her work.' " *Christenson,* 112 Ohio App.3d at 171, 678 N.E.2d at 262. Generalized allegations of this sort may, as the *Christenson* court held, require the production of specific records. But here the Medical Council's decision was based upon statistical overviews of plaintiff's cases generally, and the production of specific records with specific complaints concerning each was not required. It was well within Akron General's broad discretion to base its decision upon a statistical overview of a surgeon's cases. We are in no position to say that one sort of evidence of a surgeon's performance—a statistical overview—is medically or scientifically less accurate than another sort of evidence—the case-by-case study plaintiff suggests we require of Akron General.

Whether or not sufficient notice was provided is a question of law, *see Moore v. Philip Morris Cos., Inc.,* 8 F.3d 335, 342 (6th Cir.1993) (whether employer provided sufficient notice to satisfy administrative regulation is a question of law), and, as noted above, a district court abuses its discretion whenever it makes an error of law. The magistrate judge abused her discretion in ruling that plaintiff did not receive adequate notice.

### B. *Arbitrary decision*

■ The magistrate judge also ruled that the Medical Council's decision was arbitrary. She reasoned that because Akron General did not have a fixed mortality rate by which to judge its surgeons before

it limited plaintiff's privileges, it was arbitrary to take action against him based upon his mortality rate. We cannot agree. Surely, if plaintiff's mortality rate were 100%, the Medical Council would not be arbitrary in limiting his medical staff privileges, despite not having an established mortality rate. The magistrate judge's reasoning would prevent the Medical Council from instituting corrective action unless there were a preexisting standard by which to judge its staff. It is true that surgeons must be judged by "nondiscriminatory criteria." *Khan*, 45 Ohio St.2d at 39, 340 N.E.2d at 399 (syllabus by court). However, in this context, that means, for example, that if it came to the attention of the Medical Council that another surgeon had a mortality rate as high as plaintiff's, the latter surgeon's medical privileges would be similarly limited. *Khan* does not stand for the proposition that Akron General could not act to preserve the health of its patients by limiting the privileges of a surgeon unless it already had a rule addressing that surgeon's particular deficiency. *See Yashon v. Hunt*, 825 F.2d 1016, 1025 (6th Cir.1987) (where complaint is based upon federal procedural due process, doctor in a state-run hospital need not be judged by only previously memorialized standards; "[t]he pertinent question is whether the evidence relied upon by the [Medical Council] was reasonably related to the operation of a hospital and its attending medical staff").

■■■ On appeal, plaintiff argues that the Medical Council's decision was so wrong that it was arbitrary, capricious, or unreasonable. He points to evidence tending to show that the Medical Council's case against him was assailable. Indeed, the Hearing Committee recommended that plaintiff's full privileges be restored. But as the Ohio Supreme Court has recognized, "[t]he board of trustees of a private

hospital has broad discretion in determining who shall be permitted to have staff privileges." *Bouquett*, 43 Ohio St.3d at 50, 538 N.E.2d at 113 (syllabus by court). The board of trustees will not have abused its discretion so long as its decision is supported by any evidence. *See Christenson*, 112 Ohio App.3d at 168–69, 678 N.E.2d at 260–61. Here, the Medical Council had both the Pine Study and the STS analysis. While it is conceivable that these are inaccurate measurements of plaintiff's performance, they are evidence that the hospital was entitled to rely upon, and accordingly, we are unable to say that Akron General abused its discretion in limiting plaintiff's privileges.[2]

Whether a hospital acted arbitrarily is a question of law, *id.*, 678 N.E.2d at 260, and as pointed out above, a district court abuses its discretion when it makes an error of law. The district court abused its discretion in ruling that Akron General arbitrarily limited plaintiff's privileges.

### III.

For all the reasons stated above, the judgment of the district court is **reversed**.

MERRITT, Circuit Judge, dissenting.

I would affirm the district court's order enjoining Akron General Medical Center from limiting Dr. Sokol's privileges or reporting the adverse action taken by the hospital to any third parties. In my opinion, this is a bad case, and our court is mistaken.

The heart surgeon has been treated unfairly by his hospital. The Hearing Committee was the only group composed of experts independent of the hospital administration. It included a distinguished heart surgeon from Boston. The Committee completely exonerated Dr. Sokol. No one has cited a single operation or a single instance in which Dr. Sokol has made a

---

**2.** Plaintiff complains that the Medical Council offered no explanation for why it forbid him from doing emergent surgery or serving on cathlab standby. Because Akron General would be justified in prohibiting plaintiff from performing any surgery whatsoever, it cannot be said to have abused its discretion in limiting his privileges, rather than taking them away altogether.

mistake, not one. The lower court found, and I agree, "that Dr. Sokol should have been informed of the specific cases where he engaged in poor case selection [for bypass surgery]." This failure fully to apprise Dr. Sokol of the specific reasons for the recommendations by the Ad Hoc Committee and the Medical Council to curtail his privileges is a violation of Akron General's bylaws and fails to meet the minimum requirements of procedural due process. It violates the rule of *Christenson v. Mount Carmel Health,* 112 Ohio App.3d 161, 678 N.E.2d 255 (1996). Under *Christenson,* Dr. Sokol is entitled to the specific records on which Akron General relied—in this case that would be the same records in the same form as they were given to Dr. Pine because it is clear from the record that Akron General gave great deference to Dr. Pine's study in reaching its conclusions. Like the physician in *Christenson,* Dr. Sokol was "never informed of any specific act, omission, case, or record which demonstrated in any way any lack of clinical or surgical competency . . ." *Id.* at 165, 678 N.E.2d at 258. The hospital simply does not meet the notice standard under Ohio case law by only pointing to the statistical evidence cited in the report.