OPINION
Appellant, Roy J. Johnson, appeals from a decision of the Franklin County Court of Common Pleas affirming the order of appellee, State Medical Board of Ohio ("board"), permanently revoking appellant's license to practice medicine and surgery in the state of Ohio. In this appeal, appellant asserts the following four assignments of error:
 [1.] The trial court erred as a matter of law in concluding that Appellant was not denied due process of law when the State Medical Board of Ohio failed to provide him with notice of the allegations made against him in detail sufficient for him to prepare a defense.
 [2.] The trial court erred as a matter of law when it concluded that the State Medical Board's sole witness, Dr. Prezzia, was a competent expert witness in this case and that therefore his testimony was proper.
 [3.] The trial court erred by finding that the action of the State Medical Board of Ohio is supported by reliable, probative, and substantial evidence as required by law.
 [4.] The trial court erred as a matter of law by concluding that the State Medical Board of Ohio did not deny the Appellant due process of law when it found that the Appellant had "failed to meet minimal standards" where the Board never established or published standards pertaining to the Appellant's conduct which the State Medical Board of Ohio alleged was inappropriate, and now asserts against the Appellant retroactively.
By letter dated August 14, 1996, the board notified appellant of its intention to initiate disciplinary proceedings against him based on his alleged violations of R.C. 4731.22(B)(2) and (6).[1] The notice informed appellant that, in the routine course of his treatment of patients identified by numbers 1 through 15, he: (1) utilized controlled substances and other dangerous drugs despite his failure to conduct an appropriate physical examination and/or make objective physical findings substantiating the necessity of the medications; (2) utilized these medications in amounts and combinations which had no therapeutic value and/or were not indicated; (3) utilized multiple narcotics and/or multiple benzodiazepines, concurrently, without appropriate medical justification; and (4) routinely prescribed benzodiazepines and narcotics in treatment of injuries that occurred many years previously. Attached to the notice was a "Patient Key," which identified, by name, patients 1 through 15.
Pursuant to appellant's request, an adjudication hearing was held before the board's hearing examiner on January 13-14 and April 14-18, 21, 23, 25, and 29, 1997. At the hearing, the board offered the medical records of Patients 1-15 and the expert testimony of Dr. Charles D. Prezzia. Appellant testified extensively on his own behalf and presented testimony from another physician, Dr. William C. Manthey, as well as Patient 10.
At the hearing, appellant testified that he has had a solo general medical practice in Shelby, Ohio, a town of approximately 9,500 people, since 1962. He is not board-certified in family medicine or any other specialty. Since 1985, approximately eighty percent of his practice has consisted of industrial medicine insured by the Ohio Bureau of Workers' Compensation ("BWC"). The most common complaint among his BWC patients is pain.
Appellant testified that his treatment of the fifteen patients was within minimal standards of care. Appellant testified that he had, over the years, developed a style of practice which incorporated a "poly-pharmacy" approach to the prescription of medication. For patients with complaints of pain, he would prescribe two narcotic analgesics, generally from different schedules. He did this only with patients that he was sure were not drug abusers or drug seekers. When he prescribed two narcotics as needed for comfort, he never intended that they be taken simultaneously. He instructed the patients to use the medications only as needed for comfort and to use the lower scheduled drug when possible. He believed that his patients abided by his instructions, took the medications only as needed and did not abuse the medications.
The board's expert, Dr. Prezzia, opined that the practice of "poly-pharmacy" is not appropriate. Specifically, he opined that there is no justification for prescribing narcotic analgesics and benzodiazepines concurrently due to the risk of additive central nervous system depressant effects. He further opined that when prescribing two narcotics with the intention that the drugs be used alternatively, a physician should not prescribe a complete renewal of both prescriptions. He also stated that there is little therapeutic benefit in prescribing two narcotics over a long period of years.
Dr. Prezzia further opined that a physician should prescribe narcotic medications for a diagnosis of chronic pain only after the physician has done everything that can be done in a diagnostic, therapeutic, and curative sense and has documented the results. He also stated that abrupt termination of narcotic and benzodiazepine medications, after having been maintained on those medications for years, is dangerous because the patient may have become either physically and/or psychologically addicted to the medications.
Based on his review of appellant's records of each of the fifteen patients, Dr. Prezzia opined that appellant had not used reasonable care discrimination in the administration of drugs and had failed to conform to minimal standards of care of similar practitioners under the same or similar circumstances.
Dr. Manthey, a family practitioner from Galion, Ohio, testified as an expert witness on behalf of appellant. Dr. Manthey testified that he reviewed the patients' records and concluded that appellant's recordkeeping practices were appropriate for the time that appellant practiced.
The hearing examiner issued a fifty-eight page report and recommendation, which contained a detailed patient-by-patient summary of the facts concerning the medical care provided by appellant, along with a patient-by-patient summary of the testimony of both Dr. Prezzia and appellant. The hearing examiner concluded that appellant had demonstrated a "reckless and unjustifiable disregard" of his patients' obvious drug-seeking behavior, alcohol abuse, depression and suicidal tendencies and had disregarded the advice and concerns of consultants, specialists, psychiatrists, psychologists and family members. She also concluded that appellant had prescribed medications which may have caused or exacerbated the symptoms he was treating and failed to perform diagnostic workups to determine the cause of his patients' problems and/or to seek a cure for them. The hearing examiner also rejected appellant's testimony that he had prescribed multiple controlled substances based on his deep concern with his patients' well-being. In rejecting appellant's testimony, the hearing examiner noted that despite the fact that appellant had maintained the patients on multiple narcotic analgesics and multiple benzodiazepines for many years, he abruptly discontinued those medications without explanation and without considering that the patients may have become either physically and/or psychologically addicted to the medications. The hearing examiner also noted that when patients complained of symptoms which may have been indicative of serious withdrawal, appellant neither evaluated the patients nor attempted to minimize the effects of withdrawal.
The hearing examiner concluded that appellant's conduct constituted a violation of both R.C. 4731.22(B)(2) and (6) and recommended that appellant's certificate to practice medicine and surgery in Ohio be permanently revoked. By order dated July 9, 1997, the board approved the hearing examiner's report and recommendation and permanently revoked appellant's certificate to practice medicine and surgery in the state of Ohio.
Appellant appealed the board's order to the Franklin County Court of Common Pleas pursuant to R.C. 119.12. The court affirmed the board's decision, finding it to be supported by reliable, probative, and substantial evidence and in accordance with law. From that judgment, appellant filed this timely appeal.
Initially, we note that appellate review in this matter is limited. A reviewing common pleas court is bound to uphold an order of the board if the order is supported by reliable, probative, and substantial evidence and is in accordance with the law. R.C. 119.12; Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619,621. This court's review, however, is more limited than that of the common pleas court. "The appellate court is to determine only if the trial court has abused its discretion, i.e., being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency." Id. Absent an abuse of discretion on the part of the common pleas court, this court may not substitute its judgment for that of the medical board or common pleas court. Id.
By his first assignment of error, appellant alleges that the board's August 14, 1996 notice violated his due process rights because the charges set forth in the notice were insufficient, impermissibly vague and indefinite. Specifically, appellant argues that the notice lacked sufficient specificity as to the dates of the alleged misconduct and the particulars of any acts, conduct, and/or omissions which the board alleged to have served as the basis for its intention to discipline him. Appellant contends that as a consequence of the insufficient notice, he was unable to adequately present a defense.
A fundamental requirement of due process, that is, notice and an opportunity to be heard, must be afforded an individual whose professional license is subject to revocation in an administrative hearing. Korn v. Ohio State Medical Bd.
(1988), 61 Ohio App.3d 677, 684. In addition, the right to a hearing includes the right to appear at the hearing prepared to defend oneself through testimony, evidence, or argument against the charges brought. In re Shelley (Dec. 31, 1992), Franklin App. No. 92AP-440, unreported (1992 Opinions 6513), citing Singerv. State Medical Bd. of Ohio (Sept. 26, 1991), Franklin App. No. 90AP-1204, unreported (1991 Opinions 4694, 4704). Accordingly, due process requires that an individual receive fair notice of the precise nature of the charges that will be raised at a disciplinary hearing. Shelley, supra, at 6522-6523, citing In reMorgenstern (May 28, 1992), Franklin App. No. 91AP-1018, unreported (1992 Opinions 2130).
This court has not established a "bright line test" regarding the sufficiency of notice of the nature of the charges which will form the basis of an administrative hearing. In Stateex rel. Finley v. Dusty Drilling Co. (1981), 2 Ohio App.3d 323,324-325, this court found notice to be insufficient when the Industrial Commission of Ohio advised a relator of the time, place and location of a hearing, but no notice of the subject matter of the hearing. In so holding, this court reasoned that due process involved not only the right to notice that a hearing would be held, but also the right to appear at the hearing prepared to present testimony, evidence, or argument in support of one's case.
Similarly, in a case involving the denial of hospital staff privileges to a physician, this court held that the physician was denied the right to a fair hearing when the hospital failed to provide her with information sufficient to allow her to respond to the allegations that constituted the basis for the denial of hospital privileges. Christenson v. Mt. Carmel Health
(1996), 112 Ohio App.3d 161. In Christenson, the physician was notified by letter that her staff appointment had been denied based on, inter alia, "* * * questions regarding her clinical ability * * *." Id. at 165. This court found that the physician was denied the right to a fair hearing because she was never informed of any specific act, omission, case, or record which demonstrated in any way any lack of clinical or surgical competency on her part.
In Shelley, supra, however, this court found no violation of a physician's due process rights when the board's notice of its intention to initiate disciplinary proceedings against him informed him (as summarized by this court) that:
 * * * [I]n the routine course of his practice, he kept inadequate patient records, prescribed controlled substances and dangerous drugs based on patient requests for medications or patient complaints and that it (prescribing) was frequently done without proper diagnostic testing or other methods of evaluating the validity of the patient's complaints or the nature or severity of the pain, illness, or injury. He also prescribed controlled substance stimulants for weight loss over extended periods of time whether or not a patient lost weight. * * * [Id. at 6514.]
The notice also briefly outlined by patient the instances of improper practices and treatment and contained a list of prescriptions the physician had written for fourteen specified patients.
This court held that the board's notice sufficiently notified the physician of the charges brought against him for purposes of due process requirements. In reaching its conclusion, this court reasoned that "[t]he notice identified the applicable rules that he had violated, separately summarized appellant's improper practices in regard to fourteen patients, and attached a list of identifying prescriptions appellant had provided to the fourteen patients." Id. at 6520.
In the instant case, the board's notice referred to the specific sections of R.C. 4731.22 which formed the predicate for the charges against appellant. The letter set forth the general allegation that appellant had inappropriately utilized controlled substances and dangerous drugs in his care and treatment of fifteen patients. Following that general allegation, the board made four specific allegations regarding the manner in which appellant routinely misprescribed controlled substances and dangerous drugs for those fifteen patients. The allegations refer to appellant's fifteen patients by a "Patient Key," a copy of which was attached to the notice.
Appellant argues that the medical records contained so many pages and covered so many years of treatment that he could not have been expected to glean from the notice and the record where the specific problems with his prescribing occurred. We note, however, that a patient's medical records should contain an accurate description of the care the physician provides, the physician's findings on physical examination, the medications the physician has prescribed, and proper diagnoses to support such prescribing. Furthermore, the physician is expected to be familiar with the indications, proper dosages, contraindications, and drug interactions for any medication prescribed to a patient. Therefore, an allegation that a physician routinely prescribed controlled substances and dangerous drugs without recording "objective physical findings substantiating the necessity of the medications," or that the physician utilized controlled substances "in amounts and combinations which had no therapeutic value and/or were not indicated," or that the physician utilized multiple medications "concurrently without appropriate medical justification," does not present an unreasonable burden in preparing a defense. Appellant had the benefit of the medical records and the knowledge of his treatment of each of the identified patients.
Furthermore, given the widespread nature of appellant's alleged inappropriate prescribing and substandard treatment, it would have been unduly burdensome for the board to list every single prescription and patient visit in the notice. Due process does not require such specificity.
Furthermore, contrary to appellant's assertions, we find that appellant was given a full opportunity to prepare and present his defense to the board's charges. After the board's notice was issued in August 1996, appellant requested a hearing. He was subsequently advised that the hearing was scheduled for November 5, 6, and 7, 1996. These dates were vacated, however, in part due to appellant's failure to obtain counsel until late October 1996. The parties agreed to reschedule the hearing to January 13-15 and 20-24, 1997.
Appellant subsequently filed a motion for a more definite statement. In an attempt to alleviate appellant's concerns that he could not defend the board's charges without knowledge of the specific dates and particular instances of his alleged inappropriate conduct, the state provided appellant with a detailed report prepared by Dr. Prezzia. This report set forth with specificity the individual instances of appellant's alleged substandard conduct and contained the bases of Dr. Prezzia's anticipated testimony at the hearing.
The hearing commenced on January 13, 1997, with the presentation of the state's case-in-chief, which consisted of the introduction of the patient records and the testimony of Dr. Prezzia. After completion of Dr. Prezzia's direct examination on January 14, 1997, the hearing was recessed for three months, until April 14, 1997, for appellant and his counsel to prepare their cross-examination of Dr. Prezzia and the presentation of appellant's defense.
A review of the record does not substantiate appellant's contention that he was not afforded an opportunity to prepare and present his defense to the board's charges. The hearing did not commence for five months after appellant received the notice. In addition, he had a full three months after the presentation of the state's case-in-chief to prepare both his cross-examination of the state's expert and his defense to the board's charges. During this time, he had access to both the transcript of the hearing and all of the state's exhibits.
In addition, a review of the record indicates that appellant's counsel conducted a thorough cross-examination of the board's expert witness and presented a competent defense on behalf of appellant. There is no suggestion from the record that counsel was ill-prepared, and there has been no indication of anything additional counsel could or should have done or presented in connection with appellant's defense. Moreover, appellant has pointed to nothing that he would have done differently and nothing additional that he would or could have done either with respect to preparing a defense or presenting evidence in his defense. Appellant testified extensively on his own behalf and was given full opportunity to present an explanation for his treatment of the identified patients and/or to rebut the state's evidence.
Given the foregoing, we conclude that appellant's due process rights were not violated. The board's notice was sufficient to apprise appellant of the precise nature of the charges to be raised against him at the disciplinary hearing and he was afforded a full and fair opportunity to prepare and present his defense to those charges. Accordingly, appellant's first assignment of error is overruled.
By his second assignment of error, appellant contends that the board erred in accepting the testimony of the state's expert witness, Dr. Prezzia. Specifically, appellant argues that the board elevated the standard of care of a general practitioner to that of an occupational medicine specialist and/or family practice specialist by allowing Dr. Prezzia to testify as to whether or not appellant's conduct constituted a failure to conform to minimal standards of care utilized by similar practitioners under similar circumstances.
As noted previously, the state called as its expert witness Dr. Charles P. Prezzia. Dr. Prezzia practices occupational medicine and is the Director of Occupational and Preventative Medicine at St. Charles Hospital in Oregon, Ohio. Dr. Prezzia is certified by the American Board of Family Practice and by the American Board of Preventative Medicine in Occupational Medicine. Appellant is a general practitioner who practices in Shelby, Ohio. Appellant is not board-certified in family medicine or any other specialty. Approximately eighty percent of appellant's practice consists of industrial medicine.
In support of his contention that Dr. Prezzia's testimony was improper, appellant relies on Lawrence v. StateMedical Bd. of Ohio (Mar. 11, 1993), Franklin App. No. 92AP-1018, unreported (1992 Opinions 1234). In Lawrence, the state's expert witness specialized in anesthesiology and addiction, while the respondent was a general practitioner. Although the expert was asked to express his opinion to a reasonable degree of medical certainty as to whether the respondent had failed to meet minimal standards of care of similar practitioners under the same or similar circumstances, he was never asked whether he was familiar with the standard of care for a general practitioner as opposed to a specialist. This court found the expert's failure to express a familiarity with the standard of care for a general practitioner fatal to his testimony. This court explained:
 While it would be laudable for each physician in Ohio to practice at the optimal level of a board certified specialist, this is not what the statute requires. Dr. Pratt was not asked and no evidence was presented that he was familiar with the standard of care for a general practitioner. Dr. Pratt was not asked or presented with an opportunity to state the correct standard of care, which is, what is the minimal standard of care for a physician in appellant's circumstances, in this instance, a physician in the general practice of medicine. While Dr. Pratt may have such knowledge, it was not part of the evidence in this proceeding. It is not necessary that the state's expert be a practitioner in the same field as the doctor whose license the board proposes to revoke or suspend; however, the expert testifying on behalf of the state must express his opinions in terms of the standard to be imposed on that physician. * * * [Id. at 1239.]
In contrast to Lawrence, Dr. Prezzia practices in the same field as appellant. More importantly, when asked to express an opinion with regard to whether there was a failure to meet minimal standards of care of similar practitioners under the same or similar circumstances, Dr. Prezzia testified that his opinion (that appellant had failed to meet minimal standards of care of similar practitioners under the same or similar circumstances) was based upon his dealings with patients both in an occupational medicine and family practice setting. Because Dr. Prezzia expressed his opinion in terms of the standard to be imposed on a general practitioner such as appellant, the board did not err in accepting his testimony. Accordingly, the second assignment of error is overruled.
By his third assignment of error, appellant contends that the board's order was not supported by reliable, probative, and substantial evidence. Appellant does not challenge any of the evidence before the board; rather, appellant contends only that since Dr. Prezzia was not qualified to testify as an expert witness regarding minimal standards of care for a general practitioner such as appellant, the only testimony remaining for consideration by the board was his own and that of his expert, Dr. Manthey, both of whom testified that appellant's conduct did not fall below minimal standards of care for similar practitioners under the same or similar circumstances. Having found Dr. Prezzia's testimony regarding minimal standards of care to be entirely proper, we conclude that the board's order was supported by reliable, probative, and substantial evidence and was in accordance with law. Accordingly, we overrule appellant's third assignment of error.
By his fourth assignment of error, appellant argues that his due process rights were violated when the board permanently revoked his license to practice medicine for failure to meet minimal standards of care of similar practitioners under the same or similar circumstances, where the board had never promulgated any specific standards of practice pertaining to his alleged misconduct. For the reasons that follow, we overrule this assignment of error.
In State Med. Bd. of Ohio v. Murray (1993), 66 Ohio St.3d 527, the Supreme Court of Ohio addressed the case of a physician whom the board found to have failed to use reasonable care discrimination in the administration of drugs and failed to conform to minimal standards of care with regard to the prescribing of anabolic steroids to patients for the purpose of enhancing athletic ability. Much of the physician's conduct occurred prior to the effective date of the board's rule prohibiting such conduct. Accordingly, the physician argued that because no medical standards existed regarding steroid use prior to the board's rule prohibiting that conduct, his alleged failure to meet minimal standards of care prior to the effective date of the rule was not supported by reliable, probative, and substantial evidence due to the lack of expert testimony. The Supreme Court disagreed, explaining:
 Murray also appears to ignore the fact that the board is composed primarily of experienced heath professionals. The legislature and the courts of Ohio have delegated comprehensive decision-making power to the board. Such power includes, but is not limited to, the authority to rely on the board's own knowledge when making a decision * * *.
 It is well established that "* * * the board may rely on its own expertise to determine whether a physician failed to conform to minimum standards of care." Arlen v. State (1980), 61 Ohio St.2d 168, 172, 15 O.O.3d 190, 193, 399 N.E.2d 1251, 1254. * * * [Id. at 533.]
As the trial court noted in the instant case, not every conceivable act of practice that falls below minimal standards can be made the subject of a specific rule. That is precisely why the General Assembly has delegated the interpretation of the technical requirements of the medical profession to a twelve-member medical board, eight of whom are licensed physicians. A majority of the members of the board thus possess the specialized knowledge needed to determine the acceptable standard of general medical practice.Pons, supra, at 623. Such specialized knowledge renders the board quite capable of both interpreting the technical requirements of the medical profession and determining whether a physician's conduct falls below the minimal standard of care. Id. Courts must accord due deference to the board's interpretation of the rules of its profession. Id. at 621. Here, the board examined appellant's conduct and relied upon its own expertise in determining that appellant failed to conform to minimal standards of care for similar practitioners under the same or similar circumstances. Upon review of the record, we find it difficult to imagine that any physician could fail to recognize the inherent danger in appellant's prescribing practices, whether or not there existed a specific rule prohibiting such conduct. Accordingly, the fourth assignment of error is overruled.
Having overruled each of appellant's assignments of error, we hereby affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
BROWN, J., and LAZARUS, P.J., concur.
[1] In 1996, R.C. 4731.22(B)(2) and(6) provided:
 The board * * * shall * * * revoke * * * a certificate * * * for one or more of the following reasons:
* * *
 (2) Failure to use reasonable care discrimination in the administration of drugs, or failure to employ acceptable scientific methods in the selection of drugs or other modalities for treatment of disease;
* * *
 (6) A departure from, or the failure to conform to, minimal standards of care of similar practitioners under the same or similar circumstances, whether or not actual injury to a patient is established[.] * * *