**MUTUAL HOME & SAVINGS ASS'N, v WELKER et**

Ohio Appeals, 2nd Dist, Montgomery Co

No 1704. Decided Dec 17, 1941

George E. Nicholas, Dayton, for defendants-appellants.

William P. Patterson, Dayton, for plaintiff-appellee.

**OPINION**
By GEIGER, PJ.

This action was begun in the Court of Common Pleas on October 25, 1935, and finally reached this court on a notice of appeal filed June 12, 1941.

The petition, for a first cause of action, states that on the 6th of October, 1930, the defendants Cora A. Welker and Orla K. Welker borrowed from the plaintiff association the sum of $5300 and executed to the association their promissory note for said amount. It is stated that the defendants being in default for more than two months installment of interest, the directors of the association on September 27, 1935, declared the balance then unpaid to be due and payable; that the interest

on said loan on October 18, 1935 amounted to $1714.11; that the total credits upon said note amounted to $827.22 leaving a balance due of $6276.72 which is claimed with interest.

In the second cause of action the mortgage lien and its default are alleged and plaintiff asks for judgment for the amount claimed and that the mortgage be foreclosed and the premises sold.

On March 19, 1937, the defendants filed their amended answer admitting the execution of the note for $5300.00 and giving of the mortgage but denying any indebtedness to the plaintiff.

For a second defense it is asserted that on the 16th day of November, 1932, the plaintiff entered into a written contract with the defendant Orla K. Welker to sell and assign the note and mortgage described in the petition to Orla K. Welker in consideration of the payment or purchase of said note secured by mortgage with paid up or running stock of the association at its face value as of the date of the contract; that Welker on December 13, 1932 paid the sum of $580.00 in stock of said association, par value, to the plaintiff as required by the terms of the contract, said sum being the amount of interest due on said note. It is alleged that the contract further provided that it was to remain in full force until such time as the said Orla K. Welker could arrange his finances to enable him to obtain stock to complete the payment of or the purchase of the note and mortgage.

It is further alleged that on July 5, 1934, Welker tendered to the plaintiff the balance due on said note said tender being money in cash sufficient to purchase stock of the association as required by the terms of the contract and that the plaintiff refused to accept the same; that he has been at all times willing and ready and now is willing and ready to pay the balance, but said plaintiff has refused to comply with the terms of the written contract, a copy of which is alleged to be in the hands of the plaintiff. The defendants pray that the defendants be required to accept the balance due on said note as of July 5, 1934 in an amount of cash equal to the value of the stock of said association as of July 5, 1934.

The plaintiff filed a reply to the defendants' original answer, which does not seem to be repeated as to the amended answer, denying that it entered into a written contract with the defendant to sell and assign the note and mortgage to Welker or any other person for the consideration as alleged in the second defense.

The court in an entry of April 10, 1941, finds that the allegations of the petition are true; that the alleged contract in the amended answer was not a valid and enforcible contract and that the plaintiff is entitled to judgment as prayed for; that there is due to the superintendent of building and loan associations of Ohio, in charge of the liquidation of the plaintiff, the sum of $6276.72 on the note as set out in the first cause of action. The court further finds that the condition of the mortgage has been broken and the mortgage has become absolute and the plaintiff entitled to foreclosure; that there is due and payable to the superintendent the sum of $9094.50 as of April 1, 1941, which includes unpaid taxes.

Motion for new trial was filed and overruled and notice of appeal given as of June 12, 1941. In an entry of that date the appellee is enjoined from enforcing said judgment until the determination of this case by the Court of Appeals.

A bill of exceptions was allowed and the same filed within rule presenting the oral evidence and the exhibits submitted in the trial before the court below.

The defendant Orla K. Welker in his oral examination presented a carbon copy of a contract for payment or purchase of the real estate mortgage which he stated had been prepared by him, there being one original and three copies. The copy presented is not signed and the original has not been produced, it being testified by the officer of the association that it is not in the files relating to this loan.

By the provisions of the alleged contract the defendants are the parties of the first part and the association the party of the second part. The copy recites under the several paragraphs that the parties of the first part made the mortgage loan; that the party of the second part is the owner of the mortgage and note with power to sell, transfer, assign or accept payment thereof; that the parties of the first part agree to pay or to purchase the mortgage with stock of said party of the second part, either paid up or running, same to be applied at present face value (November 19, 1932). If the mortgage be paid, the party of the second part is to execute proper release or surrender the note, if the mortgage be purchased, to the parties of the first part.

It is asserted that the contract is made and entered into owing to the varied, delinquent condition of the described mortgage and to prevent foreclosure; that the contract shall be void unless the party of the first part pay on or before the 24th of December, 1932, "an amount equal to or more than the amount of interest due on that date, said payment to be made in stock of the party of the second part". It is further provided that should the parties of the first part pay to the party of the second part in stock the amount specified, the contract becomes binding on the party of the second part. It is further provided that owing to the suits and legal entanglements of the party of the first part, it is agreed that the contract is to remain in force until such a time that the party of the first part can so arrange his finances as to enable him to obtain stock and complete the payment of or the purchase of the above described mortgage.

The unsigned copy is dated_____day of November, 1932.

We think that the correct determination of this case involves two questions (1) Was there a contract between the plaintiff and defendant whereby it was agreed that the defendant pay his obligation to the plaintiff in stock which he could purchase on a depreciated market for much less than his contractual obligation based upon the promissory note? (2) If the defendant has established by a preponderance of the evidence that such contract actually existed, the next question is whether or not such a contract, varying the terms of the original contract, was supported by a valid consideration.

Before we sketch the evidence upon the question as to whether such a contract ever existed, we will summarize an agreed statement between counsel as the same appears in the bill of exceptions, to the effect that the facts there stated shall be entered into the record and considered as testimony together with the testimony heard by the court. It is there agreed that the records of the association show that Cora A. Welker, in September, 1930, filed with the association an application for a loan of $5300.00; that the minutes of the board showed that on October 4, 1930, the directors approved the loan of $5,000.00, and that there was no authorization contained in the minutes of the board for a loan of $5300.00, the amount of the original note. The minutes of the board do not show any approval of a conveyance of property by the defendants to the association as a compromise settlement of the note The other matters in said agreed statement of facts are not of importance.

In the trial of the case Miss Robertson appeared as a witness to establish the fact that the contract was actually entered into. She had long been connected with the association and knew of the loan to Welker and testified that he was to pay off the loan by stock at times as he wanted to do that. Being asked whether she recalled whether there was any signed agreement between Welker and the association regarding the payment of the mortgage she replied that there was a contract which she signed as a witness and that Mr. Gus Becker (since deceased) an assistant loan officer had charge of said contract. She herself was an assistant loan officer. She stated that her superior officer, Mr. Becker, showed her a carbon copy of the contract, the original of which she signed as a witness.

She does not know what became of the original. Being shown the carbon copy and asked whether she could identify it she stated, "It has all the appearance of an agreement we would make". She recognized it in a general way and stated that at a prior date she had looked at it and recalled it had been executed by Mr. Becker in her presence and that she had signed it. On cross-examination she stated she could not absolutely swear that the carbon copy was a copy of the original contract, "I suppose it is". She testifies that such matters came before the board of directors at a regular meeting and that in the particular case "I imagine it would have been submitted to the board". She stated she did not know whether the board authorized Becker to sign the contract or whether the board passed upon that contract. She did not know whether any of the terms of the contract were fulfilled by Mr. Welker. Being asked whether she could state that Mr. Becker drew the contract, she stated, "It has all the ear marks of it. I don't know whether he absolutely wrote it or not but it is the identical contract that we would have drawn under such circumstances". She was not present when it was drawn up.

It appears that the contract, as a matter of fact, was drawn by the defendant Welker upon his own letter head paper, at least the carbon copy so indicates.

Welker testifies in general that the contract was drawn by him and agreed to by Becker, the loan agent of the association, and that so far as he knew it should have been filed with the papers in the case.

A claim is made that Becker had no right to enter into such an agreement on behalf of the board.

**Sec. 8623-8 GC** under the heading "Corporate Capacity and Powers" provides that no limitation on the exercise of authority of the corporation shall be asserted in any action between the corporation and any person, except by or on behalf of the corporation against a director.

Contradicting the evidence of the defendant's witnesses, the corporation, through its officers, testified to the effect that such contract, if it had existed, would naturally be found with the original papers but that no search revealed the same and that nothing appeared upon the minutes of the corporation referring to this contract.

Welker testifies that he was engaged in a certain suit against the Union Central Life Insurance Company and that the contract may have become lost during the progress of that trial.

One of the matters that is commented upon by counsel for defendant is that the defendant presented to the corporation, as payment for then due interest, stock of the face value of $576.61 which was credited upon his book as payment of that amount of interest due. It is claimed that this is an evidence of the fact that such a contract actually existed and was recognized by the corporation.

While we are by no means satisfied with the evidence that there ever was such a signed document between the association and Welker, yet we are inclined for the purposes of this case to consider the same as having been actually executed and that the carbon copy is a correct copy of the original lost instrument.

This brings us to the consideration of whether or not such a contract had a valid consideration. To be valid there must be mutuality of obligation. If there was no consideration for the contract there could be no mutuality, nor could such contract be enforced. The general rule is that when there is no dispute as to the amount due and when the debt from one to another is definite in amount, a bare agreement to pay a lesser sum in satisfaction of a debt is not binding because there is no consideration. An agreement of a debtor to discharge the whole debt in consideration of the payment of a part is unsupported by sufficient consideration. When the debtor makes a promise to pay part of the undisputed obligation, a promise to release the debtor is without consideration.

570

"A promise to pay a debt for which the promisor is already legally bound does not constitute a consideration sufficient to support a new contract." **Shannon v Universal Mortgage & Discount Co., 116 Oh St 609.**

See **Andrews v Campbell, 36 Oh St 361.**

In 13 Corpus Juris, page 357, it is stated,

"The payment of a smaller sum in satisfaction of a larger is not a good discharge of a debt for it is doing no more than the debtor is already bound to do, and is therefore no consideration for the creditor's promise to forego the residue. This rule does not apply, however, in bona fide cases of compromise and settlement, or where there is a new circumstance raising a new consideration, as where part payment is made before the debt is due, or at another place, or in a different medium than that required by the contract."

This court in the case of **Adams Recreation Palace v Griffith, 58 Oh Ap 216,** opinion by Geiger, J., held that where a lease for a term of years is subsequently, by agreement of parties, reduced to a lesser amount, the inability of the lessee to pay the higher rent, his imminent insolvency and the desire of the landlord to retain the lessee as a tenant, constitutes a valid consideration for the reduction. The judge announcing the opinion on page 220, et seq., discusses the matter at length and comments upon many cases. The parties, if interested, will find the comment of the court at the point indicated.

The facts in this case are that the plaintiff paid to the defendant $5300 in cash; that the defendant paid but little interest and no taxes until at the time of the foreclosure the amount due was $9094.50. During the pendency of the loan and before foreclosure was begun, due to the depression the stock of the plaintiff, on the open market, could be purchased for about twenty-seven cents on the dollar. The defendant testifies that he offered to pay to the plaintiff $2000.00 in cash or the amount of stock

that could be purchased on the depreciated market for this amount of cash and that the plaintiff refused to accept the same on the ground that the property itself was worth more than this amount.

It was probably well understood in building and loan circles in Dayton that during the depression debtors of the various associations were discharging their obligations by payments in stock bought on the market at a depreciated value. This fact, however, does not establish the right of the defendant to insist upon the plaintiff accepting depreciated stock in payment of the amount loaned by the plaintiff. The time for the performance of the asserted contract was too indefinite to permit of enforcement.

We arrive at the conclusion that the judgment of the court below was not erroneous. in holding that the plaintiff was entitled to judgment in the amount of money due by reason of the loan, interest and unpaid taxes and to a foreclosure of the mortgage.

Judgment of the court below affirmed.

BARNES and HORNBECK, JJ., concur.