OPINION
{¶ 1} Appellants, Richard L. Levy, M.D., Peter R. Fried, M.D., and Marc R. Mosbacher, M.D., appeal a judgment by the Clinton County Court of Common Pleas granting declaratory relief in favor of appellee, Clinton Memorial Hospital, and denying their request for *Page 2 
declaratory and injunctive relief.[1] We affirm the decision of the trial court.
 {¶ 2} In 2005, appellee's board of trustees hired a consultant to discuss the development of a cancer center to provide full-service cancer care to cancer patients in its service area. The board envisioned care that was integrated and collaborative between medical oncologists and radiation oncologists. Appellee determined that it wanted to operate the radiation oncology department in such a way as to have a radiation oncologist present at the hospital during all times when radiation therapy was being administered. Radiation therapy patients receive treatment five days per week for several weeks, so this required a radiation oncologist to be present at the hospital five days per week.
 {¶ 3} Upon recommendation of the consultant, the board arranged for the purchase of a linear accelerator, which is a state-of-the-art piece of equipment used to deliver radiation therapy. Appellee's cobalt unit, another machine used to deliver radiation therapy to patients with cancer, was scheduled to be decommissioned in January of 2007. Appellee arranged for the construction of facilities to house the linear accelerator and office suites for professionals involved in the care of cancer patients, including among others the radiation and medical oncologists.
 {¶ 4} Appellant Levy has been providing radiation oncology services to patients at Clinton Memorial Hospital ("the hospital") pursuant to his medical staff appointment and clinical privileges there for more than 20 years. Appellants Fried and Mosbacher have also been on the medical staff and exercising clinical privileges at the hospital for several years. Appellants are associated with a corporation that also employs medical oncologists. Appellee attempted to contract with this corporation for the purpose of securing the physician coverage it envisioned for the comprehensive cancer center, including both medical and radiation *Page 3 
oncology. However, for business reasons, the corporation declined to contract with appellee under the proposed terms. The corporation determined that the volume of business in Wilmington did not warrant the presence of a radiation oncologist at the cancer center on a five-days-per-week basis.
 {¶ 5} Appellee subsequently entered into an employment agreement with Dr. Stella Ling for the provision of radiation oncology services. By board resolution adopted on January 24, 2006, appellee determined that Ling would be the exclusive provider of radiation oncology services at the facilities that comprised the new cancer center. This resolution effectively provided Ling with the exclusive use of the new linear accelerator. Appellee contends that appellants are free to continue to treat patients at the rest of the hospital as they always have. However, because the cobalt unit has been decommissioned, without access to the linear accelerator appellants have no ability to deliver radiation therapy to their patients on the hospital campus.
 {¶ 6} As a result of appellee's board resolution providing that Ling would have the exclusive right to use the linear accelerator, this suit ensued. Appellants requested a declaratory judgment that they are entitled to practice their medical specialty at the cancer center, including use of the linear accelerator. They requested a temporary restraining order, as well as temporary and permanent injunctions allowing them to exercise their privileges at the cancer center. The legal theory underlying their requests for equitable relief is that appellee was not permitted under law to enter into an exclusive arrangement, and that the medical staff bylaws and the privileges granted to appellants, separately or together, constitute contracts between appellants and appellee granting appellants the right to access and use the cancer center, including the linear accelerator.
 {¶ 7} In a separate suit against the corporate entity that employs appellants, appellee requested a declaratory judgment that the exclusive arrangements for the provision of *Page 4 
radiation and medical oncology at the cancer center by doctors who are employees of the hospital are valid and enforceable. Appellee also requested a declaratory judgment that it did not terminate the staff privileges of the doctors.
 {¶ 8} The trial court found and declared that appellee has the lawful authority to pass a resolution granting exclusive privileges to practice medical specialties at the cancer center to appellee's employees to the exclusion of other credentialed specialists. The trial court found and declared that the conferring of staff privileges does not create a contract between appellee and appellants. The trial court denied appellants' requests for equitable relief.
 {¶ 9} Appellants appeal raising four assignments of error.
 {¶ 10} Appellants' first assignment of error states:
 {¶ 11} "THE TRIAL COURT ERRED IN FINDING THAT DEFENDANT/APPELLEE HAS LAWFUL AUTHORITY TO PASS A RESOLUTION GRANTING EXCLUSIVE PRIVILEGES TO PRACTICE RADIOLOGY AND MEDICAL ONCOLOGY AT THE CMH CANCER CENTER TO RADIOLOGY AND MEDICAL ONCOLOGISTS WHO ARE EMPLOYED BY CMH UNDER A CONTRACT OF EMPLOYMENT TO THE EXCLUSION OF OTHER CREDENTIALED RADIOLOGY AND MEDICAL ONCOLOGISTS."
 {¶ 12} In Khan v. Suburban Community Hosp. (1976), 45 Ohio St.2d 39, syllabus, the Supreme Court held:
 {¶ 13} "Where the board of trustees of a private, nonprofit hospital adopts reasonable, nondiscriminatory criteria for the privilege of practicing major general surgery in the hospital, and procedural due process is followed in adopting and applying such criteria, * * * a court should not substitute its evaluation and judgment of such matters for those of the board of trustees * * *."
 {¶ 14} Although Khan was decided in the context of physician competency decisions, the Ohio Supreme Court's language limiting review of hospital decisions has been specifically *Page 5 
applied by Ohio Courts of Appeal in the context of hospital decisions limiting privileges in the adoption of closed-staff operations. See, e.g., Holt v. Good Samaritan Hospital and Health Center (1990),69 Ohio App.3d 439, 442. The rule is limited where there is a contention that the hospital failed to conform to its own procedural requirements, or acted arbitrarily, capriciously, or contrary to public policy. SeeKhan at 45. However, in reviewing a hospital's actions, the trial court "is charged with the narrow responsibility of assuring that the qualifications imposed by the Board are reasonably related to the operation of the hospital and fairly administered. In short, so long as staff selections are administered with fairness, geared by a rationale] compatible with hospital responsibility, and unencumbered with irrelevant considerations, a court should not interfere." Khan at 44, quoting Sosa v. Board of Managers of Val Verde Memorial Hospital (C.A.5, 1971), 437 F.2d 173, 177.
 {¶ 15} In Bouquett v. St. Elizabeth Corp. (1989), 43 Ohio St.3d 50, at paragraph one of the syllabus, the Ohio Supreme Court clarified the above standard, holding:
 {¶ 16} "The board of trustees of a private hospital has broad discretion in determining who shall be permitted to have staff privileges. Courts should not interfere with the exercise of this discretion unless the hospital has acted in an arbitrary, capricious or unreasonable manner or, in other words, has abused its discretion."
 {¶ 17} While the decisions above applied to private hospitals, the rationale of the cases is equally applicable to public hospitals. Judicial review of hospital decisions has been likened to judicial review of agency decisions, and we find that analysis apropos. Courts that have permitted review of the decisions of hospitals have done so because a hospital's "actions substantially affect the public interest" such that a hospital, regardless of the type of entity, cannot be considered entirely private. Lewin v. St. Joseph Hospital of Orange
(1978), 82 Cal. App.3d 368, 384. The power to determine staff membership has been called "a fiduciary power, which must be exercised reasonably and for the public good." Davidson v. *Page 6 Youngstown Hospital Assoc. (1969), 19 Ohio App.2d 246, paragraph one of the syllabus. But the scope of review is limited in deference to the expertise of the governing board of the hospital in addition to the private nature of the entity. Lewin at 385. This rationale is compelling whether the hospital is public or private. See Kelkar v. CommunityHospital of Bedford (1982), Cuyahoga App. No. 43641, 1982 WL 2339, at *9; Sosa v. Board of Managers of Val Verde Memorial Hospital,437 F.2d 173 (5th Cir.1971).
 {¶ 18} Appellants cite Kessel v. Monongalia County General HospitalCo. (2004), 215 W. Va. 609, 613, for the proposition that a physician who has conformed to the law and to all reasonable rules and regulations of a public hospital has a right to become a member of the medical staff. While this may be an accurate statement of the law of West Virginia, as applied in Ohio it appears to be inaccurate.Kessel cites to 40A Am.Jur.2d, Hospitals and Asylums Section 20 (1999), and other West Virginia cases in support of the proposition. Although the American Jurisprudence section cited provides a similar summary of the law, a review of the citations in support of the proposition reveals the inaccuracy of the statement.[2] We do not believe there is any reason at law to establish a different standard for judicial review of a board's decision regarding operation of public hospital than presently exists for the operation of a private one.
 {¶ 19} As such, the trial court properly determined that it was limited to reviewing the hospital's actions to determine whether they were arbitrary, capricious, contrary to public policy, or procedurally unfair. Khan, 45 Ohio St.2d at 44-45. On appeal, we review the trial court's decision to grant declaratory relief in favor of appellee for an abuse of discretion. *Page 7 
 Marcum v. State Auto Mutual Insurance Co., Clermont App. No. CA2004-11-098, 2005-Ohio-4628, ¶ 9, citing Bilyeu v. Motorists MutualIns. Co. (1973), 36 Ohio St.2d 35, syllabus. An abuse of discretion connotes more than merely an error of law or judgment; the trial court's decision must be unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 20} In Christenson v. Mount Carmel Health (1996),112 Ohio App.3d 161, the Tenth District Court of Appeals undertook a lengthy analysis of the proper application of appellate review of a trial court's judicial review of a hospital's decisions. In that case, the court also compared a trial court's review of a hospital's staff decisions to the judicial review of agency decisions. The decision in Christenson reviewed Ohio Supreme Court decisions regarding deference due to agency decisions. The assignment of error in Christenson argued that the trial court should have applied a hybrid standard of review, which would have allowed the trial court to weigh the evidence. Christenson quoted two particularly relevant passages. In University of Cincinnati v. Conrad (1980),63 Ohio St.2d 108, 111, the Ohio Supreme Court stated:
 {¶ 21} "[Determining whether an agency order is supported by reliable, probative and substantial evidence essentially is a question of the absence or presence of the requisite quantum of evidence. Although this in essence is a legal question, inevitably it involves a consideration of the evidence, and to a limited extent would permit a substitution of judgment by a reviewing * * * court."
 {¶ 22} Christenson at 170. The Christenson court went on to quote the Ohio Supreme Court in Ohio Historical Society v. State EmploymentRelations Board (1993), 66 Ohio St.3d 466, 471, as follows:
 {¶ 23} "`[A]n agency's findings of fact are presumed to be correct and must be deferred *Page 8 
to by a reviewing court unless that court determines that the agency's findings are internally inconsistent, rest upon improper inference, or are otherwise unsupportable.'"
 {¶ 24} Christenson at 170. The Christenson court concluded by stating:
 {¶ 25} "While we will not guess as to what weight, if any, the hospital afforded the evidence, a complete lack of evidence as to the stated basis for its decision would support a finding that the hospital abused its discretion." Id.
 {¶ 26} We find that Christenson is a proper statement of the law. We acknowledge that other evidence, such as internal inconsistency, improper inference, or unsupportable conclusions, as identified by the Ohio Supreme Court in Ohio Historical Society, may lead a trial court to determine that a hospital's decisions are arbitrary, capricious, or contrary to public policy. In the absence of such evidence, however, the trial court only must determine that there is evidence, as identified by the hospital, supporting its decision. Once the evidence is established, it is entitled to the trial court's deference.
 {¶ 27} Applying these standards, we must determine whether the trial court's determination that the hospital's actions were not arbitrary, capricious, contrary to public policy, or procedurally unfair amounted to an abuse of discretion. In the case sub judice, the trial court determined, and the record reflects, that appellee made the decision to adopt a closed-staff policy after significant study and preparation, and that the purpose of the change was to implement a holistic approach to the way cancer patients are treated at the hospital. The record contains sufficient evidence in support of appellee's decision. Further, the record does not reflect internal inconsistency, improper inference, or unsupportable conclusions by appellee. As such, the trial court did not abuse its discretion when it determined that appellee's decisions were not arbitrary, capricious, or contrary to public policy and granted declaratory judgment in favor of appellee.
 {¶ 28} Appellants argue that the board's decision to exclude appellants from the cancer *Page 9 
center was arbitrary because it was uninformed. Appellants argue that the board's decision was uninformed because the evidence indicates that some of the members of the board did not know that there was not an exclusivity provision in Ling's employment contract when it was entered into by appellee. This argument is confusing because the decision to exclude appellants was made when the board adopted a resolution providing that only Ling would be permitted to perform radiation oncology services in the cancer center. At the time the board adopted the resolution, the board would have understood that the reason the resolution needed to be adopted was that Ling's employment contract did not contain an exclusivity provision. Entering into an employment agreement with a physician involved an assumption of financial risk by the hospital. We are not convinced that the failure on the part of some of the members of the board to fully assimilate all of the nuances of the transition to a closed-staff model amounts to arbitrary action. The trial court determined, and the record reflects, that the board's decision was supported by evidence, including recommendations from hired consultants and observation of departments in other hospitals run in a similar manner. Appellants have not established that the evidence relied upon by the board was internally inconsistent, improperly influenced, or otherwise unsupportable. As such, we agree with the trial court's findings that the board did not act arbitrarily or capriciously. The trial court did not abuse its discretion.
 {¶ 29} Appellants argue that "[c]reating precedent that allows a public hospital to exclude qualified physicians in favor of a single doctor employed by the Hospital with no experience in the community is contrary to public choice. It eliminates patient choice, stifles competition among physicians to deliver superior patient care, and eliminates the predominant independent-physician model, resulting in physicians whose allegiance is to the Hospital, not the patient." At the center of this argument is an attack on the closed-staff model of department operation. However, such a model of care has been found to be valid *Page 10 
universally. Nalivar v. Mercy Helath Systems-Western Ohio (S.D.Ohio 2005), 494 F.Supp. 2d 604, 625; see, also, Williams v. Hobbs (1983),9 Ohio App.3d 331, 335; Toledo Heart Surgeons, Inc. v. ToledoHospital (2003), 154 Ohio App.3d 694, 2003-Ohio-5172, ¶ 28 fn.5. As such, we find no abuse of discretion in the trial court's findings that the hospital decision is not against public policy. Appellants' argument that appellee's decision to exclude them from the cancer center was procedurally unfair is addressed under appellants' third assignment of error.
 {¶ 30} Appellants attempt to distinguish this case from the many other cases holding that hospitals have the right to operate departments on a closed-staff basis. See, e.g., Hobbs, 9 Ohio App.3d at 335;Holt, 69 Ohio App.3d at 442. Appellants argue that appellee's decision to exclude appellants from practice at the cancer center is arbitrary or against public policy because the employment relationship with Ling is not exclusive. The result, appellants argue, is that appellee is able to admit or exclude physicians at will.
 {¶ 31} However, we find that this is a distinction without a difference. There is no motivation for either a hospital or an employee physician who is a party to a contract for employment to request exclusivity as it makes no business sense to do so. The physician has no need to seek out exclusivity because, as an employee of the hospital, the physician does not need to be concerned about protecting his or her patient base. The hospital has no motivation to offer exclusivity because it must be concerned about the demand for physician services increasing and the provision of back-up coverage during illness, disability, or vacation. To require a hospital and its employee to act contrary to their economic and practical motivations for the vain act of satisfying appellants' mutuality concerns is neither practical nor appropriate.
 {¶ 32} Appellants' argument, if taken to its logical conclusion, would create a situation where a hospital in all practicality could never make the decision to employ a physician. That *Page 11 
the employment contract does not contain a provision demanding exclusivity does not change the fact that appellee made a business decision to operate its radiation oncology department on a closed-staff basis. Further, the fact that the hospital retains the discretion to include and exclude physicians from this closed-staff model according to its unfettered discretion is no more troubling. Hospitals wield such unfettered discretion every time a contract comes up for renewal in any closed-staff model.
 {¶ 33} Although appellants cite it in support, we note that Read v.McKennon Hospital (S.D. 2000), 610 N.W.2d 782, is not compelling on the issue. Read involved a case where a radiologist was denied privileges at a hospital because the hospital purported to have an exclusive contract for services with a company, but the company refuted the existence of the exclusive contract. Id. at 786. As such, that case is not relevant to our analysis of this assignment of error.
 {¶ 34} For the foregoing reasons, appellants' first assignment of error is overruled.
 {¶ 35} Appellants' second assignment of error states:
 {¶ 36} "THE TRIAL COURT ERRED IN FAILING TO FIND THAT A CONTRACT EXISTS BETWEEN PLAINTIFFS/APPELLANTS AND DEFENDANT/APPELLEE."
 {¶ 37} Appellants contend that a contractual arrangement existed between appellants and appellee in either of two respects. Appellants argue first that appellee's medical staff bylaws constitute a binding contract between appellants and appellee. Appellants also argue that their hospital privileges, alone or when considered in conjunction with the medical staff by-laws, constitute a contract. Appellants contend that appellee breached one or both of these contracts when appellee "constructively terminated" appellants' privileges by denying them access to the linear accelerator at the cancer center.
 {¶ 38} Under this assignment of error, we are again asked to review the trial court's decision to grant declaratory judgment. The proper standard of review is abuse of discretion. *Page 12 
 Marcum, 2005-Ohio-4628, ¶ 9, citing Bilyeu, 36 Ohio St.2d 35 at syllabus. With respect to medical staff by-laws, Ohio law is clear. InBouquett, 43 Ohio St.3d at 52, the Ohio Supreme Court adopted a rule stating that, to determine whether a hospital is bound in contract by the medical staff by-laws, a court "must consider the language of the bylaws at issue." As such, we must determine whether the trial court judge abused his discretion when he determined that, in accordance with the language employed in the by-laws, no contract existed. The trial court reasoned that, because there is no mutuality of obligation between the parties, the bylaws do not amount to a valid enforceable contract under Ohio law. The trial court noted that appellee could not require members of the medical staff to exercise their privileges.
 {¶ 39} In Episcopal Retirement Homes, Inc. v. Ohio Department ofIndustrial Relations (1991), 61 Ohio St.3d 366, 369, the Ohio Supreme Court stated:
 {¶ 40} "The Restatement of the Law 2d, Contracts (1981) 5, Section 1, defines a `contract' as `[a] promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty.' In order to declare the existence of a contract, both parties to the contract must consent to its terms; there must be a meeting of the minds of both parties; and the contract must be definite and certain." (Citations omitted.)
 {¶ 41} Accordingly, the trial court correctly determined that, in order to maintain an action for breach of contract, appellants needed to establish a promise or set of promises giving rise to a duty. Appellants argue at length in their brief that appellee has obligations to them under the by-laws. Appellants cite the obligation on the part of appellee to provide a hearing before revoking privileges, and to permit appellants to exercise their "participatory right" to render care. Assuming arguendo that appellee has these obligations under the bylaws, appellants have failed to prove mutuality of obligation. The trial court's reasoning did not state that appellee did not have duties according to the terms of the by-laws. Rather, the *Page 13 
trial court noted that appellants have no obligations under the by-laws. Appellants may choose to treat no patients at the hospital, and in so doing, appellants will have breached no duty arising under the by-laws. Although appellants are "required" under the terms of the bylaws to treat one patient per year, if appellants fail to do so, the only result is that appellee may unilaterally terminate appellants' courtesy staff appointment at the end of the year. The same is true with respect to payment of medical staff dues. As such, we interpret these things to be conditions of courtesy staff appointment, not an obligation of performance. Appellants have no legally binding duties under the purported contract, and appellees likewise have no remedy at law for a breach. A contract that lacks mutuality of obligation lacks the fundamental requirement of consideration. Helle v. Landmark, Inc.
(1984), 15 Ohio App.3d 1, *12; Mutual Home Savings Ass'n v.Welker (App. 1941), 35 Ohio Law Abs. 566, 42 N.E.2d 167, 170.
 {¶ 42} In addition to consideration, in order to find the existence of a contract, there must also be a meeting of the minds. "Essential to valid contract formation is a meeting of the minds by the parties as to the essential terms of the contract, such that `a reasonable person would find that the parties manifested a present intention to be bound to an agreement.'" Zelina v. Hillyer (2005), 165 Ohio App.3d 255, 259, citing Telxon Corp. v. Smart Media of Delaware, Inc., Summit App. Nos. 22098 and 22099, 2005-Ohio-4931, ¶ 40. In the case at bar, there is no indication that the terms of the by-laws were certain in such a way as to indicate a meeting of the minds. The preamble to the bylaws states, "[t]hese bylaws provide structure for medical staff operations, and relations among physicians with the Hospital Administration and the Board of Trustees and with applicants for appointment to the Medical Staff, all subject to the corporate authority of the Board of Trustees in those matters where the Board has ultimate legal responsibility." This statement manifests general intent that the Board not be constrained by the terms of the bylaws. *Page 14 
 {¶ 43} In addition, the terms of the bylaws manifest the board's specific intention that the bylaws not be construed as creating a contractual obligation. The bylaws retain for the board the right to redefine a medical staff appointee's prerogatives at any time. The bylaws define a "prerogative" as "a participatory right granted, by virtue of staff category or otherwise, to a staff appointee and exercisable subject to the conditions imposed in these Bylaws and other Hospital and Medical Staff policies." The courtesy staff prerogatives provide that a physician may "[a]dmit or render care to patients in the Hospital in accordance with the clinical privileges granted to him pursuant to these Bylaws." The prerogatives granted to courtesy staff under the bylaws are specifically limited in the bylaws as follows: "The prerogatives set forth under each Staff category are general in nature and may be subject to limitations by special conditions to a practitioner's appointment pursuant to these Bylaws, Rules and Regulations or by other policies of the Medical Staff, Credentials Committee or Board." As such, by their very terms the bylaws preserve the board's authority to limit a medical staff appointee's ability to exercise prerogatives by retaining the right to subject the prerogatives to limitations. Because the board retains the right to redefine the terms of a physician's right to practice at the hospital, there cannot be a meeting of the minds as to the essential terms of a contract. As such, there is no contract. See Zelina at 258-59.
 {¶ 44} Accordingly, we find that the trial court did not abuse its discretion when it determined that the bylaws do not constitute a contract between appellants and appellee.
 {¶ 45} Appellants also argue that their privileges constitute a contract between appellants and appellee. This is a novel argument under Ohio law. Appellee argues that, because courts in Ohio have permitted hospitals to operate closed-staff departments, no legal basis exists for appellants to argue that their privileges constitute a contract. However, a hospital's right to operate a closed-staff department is subject to limitations imposed by the hospital's contractual obligations to its medical staff. If the privileges can be construed as a *Page 15 
contract, appellants' contractual rights thereunder would limit appellee's right to exclude them from the cancer center.
 {¶ 46} In the case at bar, there is no basis to conclude that appellants' privileges constitute a contract. The nature of appellants' privileges cannot be determined without reference to the medical staff bylaws. Under the bylaws, privileges are defined as "the permission granted to a practitioner or allied health professional by the Board to render specific diagnostic, [sic] therapeutic services." Privileges are best understood as a statement by a hospital that a physician is qualified to provide a specific service. Appellants' privileges include the ability to "evaluate, treat, and provide consultation to inpatients and outpatients * * * with cancer utilizing the following modalities: * * * administration of external beam radiotherapy with orthovoltage and megavoltage equipment." The record reflects that this language refers to the use of a linear accelerator.
 {¶ 47} The documents that describe appellants' privileges specifically state that physicians are "constrained by hospital and medical staff policies." Appellants argue that this is sufficient to constitute consideration by the physicians because, in accepting privileges at the hospital, they have changed their position to their detriment. SeeGianetti v. Norwalk Hospital (Conn. 1989), 557 A.2d 1249, 1254-55;Virmani, M.D. v. Presbyterian Health Services Corp. (N.C.App. 1997), 488 S.E.2d 284, 288; Janda v. Madera Community Hospital, et al.
(E.D.Cal.1998), 16 F.Supp. 2d 1181, 1188. The privileges require appellants to be subject to the bylaws only in the event that they "exercis[e] any privileges granted." Once the physicians have endeavored to treat a patient and are thus bound by the bylaws, it appears that consideration would be present.
 {¶ 48} However, there still is lacking a meeting of the minds. The bylaws state that a practitioner "shall * * * be entitled to exercise only those clinical privileges * * * as are specifically granted pursuant to the provisions of these Bylaws, the Credentials Standard Policy and *Page 16 
Procedure, and the Staff Rules and Regulations." It is apparent that appellants' authority to exercise their privileges is derived from the bylaws. As stated above, as courtesy staff, the prerogatives provided in the bylaws permit appellants to "[a]dmit or render care to patients in the Hospital in accordance with the clinical privileges granted to [them] pursuant to [the] Bylaws." As such, it is the applicable prerogatives that provide appellants with authority to exercise their privileges. However, the prerogatives granted to courtesy staff under the bylaws are specifically limited in the bylaws: "The prerogatives set forth under each Staff category are general in nature and may be subject to limitations by special conditions to a practitioner's appointment pursuant to these Bylaws, Rules and Regulations or by other policies of the Medical Staff, Credentials Committee or Board." We interpret this provision to mean that the board retains the right unilaterally to alter the extent of the prerogatives of its staff. As the trial court stated, "It is apparent from a reading of the ByLaws that the ultimate decision as to the granting and withdrawal of privileges and prerogatives lies with the Board of Trustees." We again find that, because the board retains the right to redefine the terms of the physician's right to practice at the hospital, there cannot be a meeting of the minds as to the essential terms of the contract. Without a meeting of the minds, there is no contract. See Zelina, 165 Ohio App.3d at 258-59. Accordingly, the trial court did not abuse its discretion when it determined that appellants' privileges do not constitute a contract between appellants and appellee.
 {¶ 49} Because they each reflect a lack of a meeting of the minds, we find that the privileges and bylaws construed together likewise lack the essential terms of a contract.
 {¶ 50} We note further that, even if the bylaws and/or the privileges did amount to a contract between appellants and appellee, the trial court's decision to grant appellee's request and deny appellants' request for equitable relief still would not have been an abuse of discretion. Because appellee retains the right to modify the prerogatives of its medical staff, *Page 17 
the board's adoption of the resolution limiting access to the linear accelerator to its physician employee would not have been in breach of contract.
 {¶ 51} For the foregoing reasons, appellants' second assignment of error is overruled.
 {¶ 52} Appellants' third assignment of error states:
 {¶ 53} "THE TRIAL COURT ERRED IN FINDING THAT DEFENDANT/APPELLEE'S CONSTRUCTIVE TERMINATION OF PLAINTIFF/APPELLANTS' PRIVILEGES DID NOT TRIGGER PLAINTIFFS/APPELLANT'S PROCEDURAL RIGHTS UNDER THE MEDICAL STAFF BYLAWS."
 {¶ 54} In the first paragraph of its analysis, the trial court stated,
 {¶ 55} "the Plaintiffs contend that the refusal to allow them access to the linear accelerator to treat their patients in the Cancer Center is at least a constructive term ination of part of their core privileges. The Court agrees with the Plaintiffs. The exclusive arrangement resolved and passed by the Board of Trustees as to who can practice radiology at the Cancer Center did exclude the Plaintiff Doctors from practicing their specialty, which is high power radiation treatment for cancer, granted to them in their core privileges. The fact that they have other alternatives for treating patients does not mitigate that fact."
 {¶ 56} We note that this finding by the trial court appears to be at odds with established law in Ohio, which states that adoption of a closed-staff model that results in limitations on a physician's ability to practice at a given hospital does not result in the reduction or revocation of privileges. See, e.g., Holt, 69 Ohio App.3d at 446. However, this issue has not been raised on appeal.
 {¶ 57} The trial court also noted in its decision that "this is not a case where appellants' privileges are being terminated or modified under Article V or Article VII for professional concerns which would trigger the appellate process set forth in the ByLaws." Appellants contend that the trial court's finding in its decision that a part of appellants' privileges have *Page 18 
been terminated triggers appellants' rights to an appeal under the medical staff bylaws and consistent with their due process rights, and that the trial court's statements to the contrary are incorrect.
 {¶ 58} R.C. 3701.351 requires that a hospital adopt "standards and procedures to be applied by the hospital and its medical staff in considering and acting upon applications for staff membership or professional privileges." Appellee has adopted such standards and procedures in the form of its bylaws. Appellants have not argued that the bylaws are arbitrary, unreasonable, or unfair. See Siegel v. St.Vincent Charity Hospital Health Center (1987), 35 Ohio App.3d 143,152. Appellants argue only that the trial court's interpretation of the bylaws is incorrect.
 {¶ 59} When the language of a written instrument is clear and unambiguous, the interpretation of the instrument is a matter of law.Houchins v. Houchins, Stark App. No. 2006CA00205, 2007-Ohio-1450, ¶ 20, citing Beverly v. Parilla (2006), 165 Ohio App.3d 802. Because it is a matter of law, this court reviews the trial court's interpretation de novo. Nationwide Mutual Fire Insurance Co. v. Guman Brothers Farm
(1995), 73 Ohio St.3d 107, 108. The trial court found that the language of the bylaws indicated that appellants' rights to an appeal would only be triggered in the event that privileges were "terminated or modified under Article V or Article VII for professional concerns[.]" Appellants argue that the trial court erroneously injected a requirement that the adverse effect on appellants' privileges be the result of professional concerns. A reading of the bylaws indicates that the trial court's construction of the bylaws is accurate.
 {¶ 60} The only provision under the bylaws that could arguably give rise to a right to a hearing is Article VIII.D.1, which states:
 {¶ 61} "In any case where the Board takes action or makes a recommendation pursuant to Articles V. and VII., without an adverse recommendation by the Medical Executive *Page 19 
Committee which adversely affects the clinical staff privileges or staff appointment of a practitioner, the practitioner shall be entitled to a hearing."
 {¶ 62} Appellants are correct that these bylaws do not contain an explicit term providing that review is available only when the adverse effect is a result of professional concerns. By its terms, however, this bylaw provides a right to a hearing only if the Board takes an action or makes a recommendation pursuant to Article V or Article VII. Article V of the bylaws deals with appointment or reappointment to the medical staff and modification of staff appointment status. Appellants do not contend that their respective medical staff appointments have been revoked or modified, so this provision is not relevant to the case at bar. Article VII relates to review of professional competence and conduct of the medical staff. Any right to a hearing thereunder arises only as a result of professional concerns, which are not at issue in this case. The trial court properly determined that no appeal right exists under the bylaws.
 {¶ 63} To the extent that appellants' argue that they have a due process right to notice and a hearing arising elsewhere, such a right exists only in a situation where a physician must be given an opportunity to defend himself. Nilavar, 494 F. Supp. 2d at 625. Appellee has made no suggestion that appellants are incompetent or have failed to conduct themselves properly. Because there is nothing to defend, no hearing must be accorded. Id.
 {¶ 64} Appellants' third assignment of error is overruled.
 {¶ 65} Appellants' fourth assignment of error states:
 {¶ 66} "THE TRIAL COURT ERRED IN DENYING PLAINTIFFS/APPELLANTS' DEMANDS FOR DECLARATORY AND INJUNCTIVE RELIEF AND IN GRANTING DECLARATORY RELIEF TO DEFENDANT/APPELLEE."
 {¶ 67} Because we have overruled appellants' first three assignments of error, we have determined that the trial court did not err in denying appellants' demands for declaratory and injunctive relief and in granting declaratory relief to appellee. Accordingly, appellants' fourth *Page 20 
assignment of error is overruled.
 {¶ 68} Judgment affirmed.
BRESSLER, P.J. and WALSH, J., concur.
[1] Pursuant to Loc.R. 6(A), we have sua sponte removed this appeal from the accelerated calendar for purposes of issuing this opinion.
[2] The West Virginia cases excepted, the remaining cases do not stand for the proposition for which they are cited. Findlay v. Board ofSuperiors of Mohave County (1951), 72 Ariz. 58, 64, and Ware v.Benedikt (1955), 225 Ark. 185, 187, both cite "arbitrary" as the standard of judicial review. Henderson v. City of Knoxville (1928), 9 S.W.2d 697 has been statutorily superceded. Hamilton County Hospital v.Andrews (1949), 227 Ind. 217, 224, cites the American Jurisprudence provision itself, as well as Andrews. *Page 1